The STATE of Texas, ex rel. Travis B. BRYAN, III, Applicant

v.

The Honorable W.T. McDONALD, Jr., Respondent.

No. 69137.

Court of Criminal Appeals of Texas, En Banc.

Dec. 14, 1983.

Rehearing Denied Jan. 18, 1984.

Travis B. Bryan, III, Dist. Atty. and Bill R. Turner, Asst. Dist. Atty., Bryan, for applicant.

William W. Vance, Bryan, for respondent.

## OPINION

PER CURIAM.

This is an original action brought by Travis B. Bryan, District Attorney of Brazos County, seeking a writ of mandamus directing the Honorable W.T. McDonald, Jr., Judge of the 85th Judicial District Court of Brazos County, to rescind his order of March 2, 1983, in Cause Nos. 14,257 and 14,258. In this order respondent refused to refrain from viewing a pre-sentence investigation report prior to the determination of guilt or innocence in the two cause numbers styled The State of Texas v. Thomas Shannon Darr. Respondent also issued a "Court's Proposed Assessment of Punishment" in the two cases, prior to a determination of guilt or innocence. Applicant asks a writ of mandamus directing respondent to set aside the proposed assessment of punishment.

Applicant also seeks a writ of prohibition prohibiting the respondent in the future from viewing pre-sentence investigation reports prior to determinations of guilt and prohibiting the respondent from issuing proposed assessments of punishment. The procedure applicant complains of was instituted by respondent in an order dated August 27, 1982, and entitled, "Amended Procedure for Sentencing Guidelines."

The procedures set up by the guidelines provide that if a defendant wishes to apply for probation or to have the court assess punishment *he must* first give written consent to allow the trial court to review a pre-sentence investigation report prior to a finding of guilt. The defendant provides the probation department with an extensive personal history. Information is gathered concerning the defendant's prior arrests, juvenile proceedings, family history, education, employment, mental and emotional state, and the use of drugs or alcohol. The probation officer then includes portions of that information in a pre-sentence investigation report.

The officer also gathers information about the crime for which the defendant is charged. Most of the information comes from police offense reports. The defendant is allowed to give his version of the offense if he desires. An edited version of this information is included in the pre-sentence report.

The probation officer makes no representation that the information contained in the pre-sentence report is truthful. The information is rarely verified. Those people supplying the information for the report are not placed under oath. Neither are they subject to cross-examination by the opposing party.

When the report is completed the probation officer makes his recommendation as to punishment and forwards the report to the Chief Adult Probation Officer. The Chief of Adult Probation then assigns various numerical values to the defendant and the crime he committed (based on factors such as age, marital status, and time spent in the community) and applies those numbers to a "grid." The resulting suggested sentence for the defendant is then read off the "grid" and given to the trial court along with the pre-sentence investigation report.

Meanwhile, the defendant's attorney and the prosecutor have fifteen days after arraignment to reach a plea agreement. Thereafter, they are precluded from reaching a plea except for good cause shown.

After the fifteen days have run, the trial court reviews the pre-sentence investigation report and promulgates a "Court's Proposed Assessment of Punishment," which informs the defendant what his punishment will be if he pleads guilty.

Once the proposed assessment is issued, the defendant has ten days to accept or reject it. If the court's offer is rejected, the case is set for trial. If the defendant accepts the offer, the case is set for a guilty plea. The defendant may forward additional information to the court about himself in hopes of easing the proposed sentence. The court considers that information and sometimes issues a second proposal. In the

event of a guilty plea, the State and defense may introduce evidence in hopes of changing the court's mind regarding punishment.

If the State and the defense reach a plea agreement in the fifteen day post-arraignment period, the agreement is attached to the pre-sentence investigation report. The court then notifies the respective parties if it will accept, reject, or modify the plea agreement.

■ With respect to the respondent's practice of viewing pre-sentence investigation reports prior to a determination of guilt, we do not perceive his statutory authority to do so.

Pre-sentence investigation reports were authorized under Art. 42.12, Sec. 4, V.A.C. C.P., at the time of the proceedings below. Art. 42.12, V.A.C.C.P., is entitled, "Adult Probation, Parole, and Mandatory Supervision Law." Sec. 1 of this article states:

"Sec. 1. It is the purpose of this Article to place wholly within the State courts of appropriate jurisdiction the responsibility for determining when the imposition of sentence in certain cases shall be suspended, the conditions of probation, and the supervision of probationers, in consonance with the powers assigned to the judicial branch of this government by the Constitution of Texas ..."

At the time of the proceedings below, Art. 42.12, Sec. 4, supra, stated in pertinent part:

"Sec. 4. When directed by the court, a probation officer shall fully investigate and report to the court in writing the circumstances of the offense, criminal record, social history and present condition of the defendant. Whenever practicable, such investigation shall include a physical and mental examination of the defendant ..."[1]

The power of a district court to order pre-sentence investigative reports and to inspect and consider them as evidence is connected by statute to its power to grant probation. The consideration of such reports prior to assessment of punishment constitutes an exception to longstanding evidentiary rules. Nothing in Art. 42.12, supra, a statute pertaining to probation, parole, and mandatory supervision, authorizes dispensing with evidentiary rules or allows inspection of the reports prior to a determination of guilt.

In addition to the lack of statutory authority for the inspection of pre-sentence investigation reports prior to a determination of guilt, it is well to note, as we have in the past, Canon 3(A)(4) of the Code of Judicial Conduct of the Judiciary of the State of Texas which provides:

"A judge should ... neither initiate nor consider ex parte or other private communications concerning a pending or impending proceeding."

See *Ex Parte Shuflin*, 528 S.W.2d 610, 617 n. 2 (Tex.Cr.App.1975).

■ The inspection of the pre-sentence reports prior to determinations of guilt is also violative of due process. See Art. 1, Sec. 19, Texas Constitution and the Fourteenth Amendment to the United States Constitution. Wholesale evidence, almost always of a hearsay nature, not sworn to and not subject to the rigors of cross-examination, is obviously considered by the trial court under the system in question as a matter of course before a plea is even entered.

It will not suffice to say, as respondent alternatively suggests, that we assume the trial court disregards all inadmissible evidence. The very procedure by which the improper evidence is considered was established entirely at the behest of the court. How can the court maintain its status as a neutral arbiter between competing parties when it insists on considering, as a matter of course, evidence theoretically inadmissible in a court of law?

1. Art. 42.12, supra, has been amended effective August 29, 1983, and now specifically prohibits the trial court from inspecting a pre-sentence investigation report until a defendant pleads guilty or nolo contendere or is convicted. Under the amended statute the trial court *can* inspect the report prior to a determination of guilt if the defendant so authorizes in writing.

Applicant has not alleged that respondent actually considers the material in the pre-sentence reports *in making* any determinations of guilt or innocence nor is such an allegation necessary. The procedure established by respondent lends itself to such consideration and makes it highly likely to occur. That this result is probable requires a prophylactic rule preventing the implementation of respondent's procedure.

In *Webb v. State,* 161 Tex.Cr.R. 442, 278 S.W.2d 158, 160 (1955), we noted that due process, "includes and means that an accused shall, in a criminal case, be accorded that fundamental fairness necessary to the due administration of justice."

The respondent's practice of reviewing prior to a determination of guilt unsworn testimony not subject to the rigors of cross-examination, a review that does not take place before opposing parties in a court of law, is for all practical purposes an *in camera* proceeding.

In *In Re Taylor,* 567 F.2d 1183, 1187–88 (5th Cir.1977), the court opined that:

"*In camera* proceedings are extraordinary events in the constitutional framework because they deprive the parties against whom they are directed of the root requirements of due process, i.e. notice setting forth the alleged misconduct with particularity and an opportunity for a hearing ... Whenever the legal rights of individuals are to be adjudicated, the presumption is against the use of secret proceedings."

In *Carroll v. Princess Anne,* 393 U.S. 175, 183, 89 S.Ct. 347, 352, 21 L.Ed.2d 325 (1968), the Supreme Court stated:

"The value of a judicial proceeding ... is substantially diluted where the process is *ex parte* because the court does not have available the fundamental instrument of judicial judgment: an adversary proceeding in which both parties may participate."

Respondent is prohibited from further implementation of the portions of his order of August 27, 1982, allowing inspection of pre-sentence investigative reports prior to a determination of guilt or innocence.[2]

Since the procedure utilized pursuant to respondent's order of August 27, 1982, is violative of Art. I, Sec. 19, of the Texas Constitution, respondent cannot proceed with it under authority of the amended portions of Art. 42.12, Sec. 4, V.A.C.C.P.[3] We do not reach the question whether the procedure under discussion in the instant case is now authorized under Sec. 4(c), or if Sec. 4(c) comports with due process of law.

Applicant also asks that respondent be prohibited from issuing proposed assessments of punishments, at least prior to the completion of any plea agreements between the State and defense and that the proposed assessment made in the case of Darr be set aside.

In the past, this Court has clearly indicated the impropriety of judicial involvement in plea negotiations. In *Kincaid v. State,* 500 S.W.2d 487, 490 (Tex.Cr.App. 1973), we stated:

"The evidence here was conflicting as to whether the trial court made a promise to grant probation before the guilty pleas were entered ...

" . . .

"It would have been unjudicial and contrary to public policy for the trial judge to commit himself as to his decision prior to the hearing. Our system contemplates that decisions are to be reached after evidence and argument of counsel and not before. As experienced lawyers, ap-

---

2. Obviously, respondent cannot completely undo his act of reviewing the pre-sentence report in the cases involving Thomas Shannon Darr. In the event of any future determination of guilt or innocence with respect to Darr, respondent court should disregard any information learned from the premature viewing of the report.

3. Sec. 4 of Art. 42.12, supra, as amended, states in pertinent part:

"(c) The court may not inspect a report and the contents of the report may not be disclosed to any person unless:

"(1) the defendant pleads guilty or nolo contendere or is convicted of the offense; or

"(2) the defendant, in writing, authorizes the judge to inspect the report."

pellant's counsel ... should not have sought or expected the trial judge to commit himself in advance of the hearing and before the presentence report was made by the probation officer ... "

In *Ex parte Shuflin,* supra, at 616–617, we stated:

"The American Bar Association's standards relating to pleas of guilty and the function of the trial judge ... provide excellent guidance. These standards provide that the trial judge should not participate in plea discussions until tentative agreement has been reached. This is to avoid even the appearance of judicial coercion or prejudgment of the defendant by the court ...

" ...

" ... The proper practice is for the trial court carefully to avoid participation or the appearance of participation in plea discussions or negotiations until such time as an agreement has been reached."

Judicial involvement in plea negotiations runs afoul of due process and fundamental fairness in several ways.

First, the trial court's role as neutral arbiter between competing parties is compromised as the court seeks to convince the defendant to accept its proffered plea.

Second, rejection of the court's offer by a defendant creates the possibility of prejudice against the defendant on the court's part whether or not such prejudice is conscious or intentional.

Third, the trial court's power over the defendant gives it an uneven advantage in the negotiations and brings home to the defendant the possibly unhappy consequences of rejecting the court's offer.

Finally, during the course of negotiations between the court and the defendant, the defendant may very well make explicit or implicit admissions or confessions that would not normally be admissible before the court during formal trial. See *United States v. Adams,* 634 F.2d 830 (5th Cir. 1981); *United States ex rel. Elksnis v. Gilligan,* 256 F.Supp. 244 (S.D.N.Y.1966).

For all of the above reasons, we agree that respondent's practice of issuing proposed assessments of punishment is violative of Art. 1, Sec. 19 of the Texas Constitution. Such a proposed assessment should not have been issued in the cause of action involving Thomas Shannon Darr and should be set aside. Nor should such proposed assessments be issued in any future cases. Of course, the trial court remains free in every or any case to refuse to allow plea bargaining or to reject a particular plea bargain entered into by the State and defense. See *Morano v. State,* 572 S.W.2d 550 (Tex.Cr.App.1978); *Cruz v. State,* 530 S.W.2d 817, 819 (Tex.Cr.App.1975); Art. 26.13, V.A.C.C.P.

A writ of mandamus or prohibition may be the proper relief to set aside an improper order. Prohibition is proper to restrain enforcement of a future act and not to undo an act already performed. *Ex parte Gray,* 649 S.W.2d 640 (Tex.Cr.App. 1983). We expect that the respondent court will comply with this opinion without requiring this Court to issue the appropriate writs of mandamus and prohibition. Thus, the relief requested by applicant is conditionally granted. The appropriate writs will not issue unless the respondent court refuses to comply with this order.

It is so ordered.