The STATE of Texas ex. rel. Bill R. TURNER, District Attorney, Brazos County, Petitioner,

v.

W.T. McDONALD, Jr., Judge, 85th Judicial District Court of Brazos County, Respondent.

No. 69264.

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 1984.

Bill Turner, Dist. Atty., Bryan, for petitioner.

W.T. McDonald, Jr., W.W. Vance, Bryan, for respondent.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

PER CURIAM.

This is a sequel to an original action brought by Bill R. Turner, District Attorney of Brazos County, seeking issuance of writs of mandamus and prohibition in which relief was found by the Court to be appropriate. *State ex. rel. Bryan v. Mc-*

*Donald*, 662 S.W.2d 5 (Tex.Cr.App.1983) [hereinafter *Bryan v. McDonald* ].

In that cause, we encountered a document entitled "Amended Procedure for Sentencing Guidelines In The 85th District Court," promulgated pursuant to an "order" by the Respondent, W.T. McDonald, Judge of the 85th Judicial District Court of Brazos County. We there concluded:

"Respondent is prohibited from further implementation of the portions of his order of August 27, 1982, allowing inspection of pre-sentence investigative reports prior to a determination of guilt or innocence [since the procedure is violative of Art. I, § 19, Tex.Const.].

\* \* \* \* \* \*

[R]espondent's practice of issuing proposed assessments of punishment is violative of Art. I, Sec. 19 of the Texas Constitution. Such a proposed assessment should not ... be issued in any future cases. Of course, the trial court remains free in every or any case to refuse to allow plea bargaining or to reject a particular plea bargain entered into by the State and defense."

However, the Court declined formally to issue the writ of prohibition to Respondent, expressing the expectation he would comply with our opinion, which was delivered December 14, 1983. Respondent's motion for rehearing was denied January 18, 1984.

Our petitioner now claims Judge McDonald, in disregard of our prior opinion, issued a second "Amended Procedures for Sentencing Guidelines" on January 27, 1984, which still contains the unconstitutional features condemned in *Bryan v. McDonald.*

Judge McDonald points to the fact that Article 42.12, § 4, V.A.C.C.P., has been

substantially amended since the time the procedure passed upon in *Bryan v. McDonald* was employed. He correctly notes that this Court specifically declined to pass upon the constitutionality of Article 42.12, § 4, as amended, effective August 29, 1983, in *Bryan v. McDonald;* he claims that his most recent and present sentencing guidelines comply with Article 42.12, § 4, as amended. Given his reliance on recently enacted § 4, we first examine that legislation.

Section 4 originated in House Bill 1178, 68th Legislature, Regular Session. As introduced on March 2, 1983 by Representative Parker and reported favorably without amendments to the House, the bill purports to amend § 4, but actually it is a complete substitute.

As reported, subsection (a) of proposed § 4 read:

"Sec. 4. (a) Except as provided in Subsection (b) of this section, in a criminal case the court *shall direct* a probation officer to report to the court in writing on the circumstances of the offense with which the defendant is charged, the criminal and social history of the defendant, and any other information relating to the defendant or the offense requested by the court." [1]

Noticed immediately is that, unlike the discretionary nature implicit in former section 4, proposed subsection (a) is a mandate to trial courts to direct a probation officer to make the prescribed report in every criminal case, excepting only two alternative conditions.[2]

Also, neither indicates at what point in the proceedings is the court to issue such a direction to the probation officer. How-

---

**1.** Compare with similar provisions in former section 4, *viz:*

"*When directed by the court,* a probation officer shall fully investigate and report to the court in writing the circumstances of the offense, criminal *record,* social history *and present condition* of the defendant. *Whenever practicable, such investigation shall include a physical and mental examination of the defendant.* \* \* \* \*"

(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

**2.** That directing a probation officer is otherwise mandatory is confirmed by the alternates provided in subsection (b). Thus, its introduction is: "The court is *not required to direct* a probation officer to prepare a report if: ..."

ever, it will be recalled that in 1981 the Legislature amended Article 37.07, V.A.C. C.P., to provide that when a judge assesses punishment, "he may order an investigative report as contemplated by Section 4 of Article 42.12 of this code" as an aid to assessment of punishment.[3]

When the bill got to the floor, Representative Parker offered and the House adopted without objection an amendment to subsection (a) to insert after its introductory clause the phrase "prior to the imposition of sentence by the court." House Journal, p. 1944. The journal does not report any rationale for that amendment, but we surmise that it was thought to be an indication of a time frame within which a court is to direct a probation officer to proceed with the prescribed investigation. If so, there is no beginning—unless it be whenever "a criminal case" begins—only an ending. In any event, a trial judge is left to wonder just when it is that the court must give a direction to a probation officer.

Subsection (b)(2) was rewritten by an amendment offered by Representative Parker, but more in form than substance. Otherwise, that entire subsection was adopted as reported by committee, as was subsection (c).

When it came to the floor for second reading, subsection (d) provided:

"(d) Before sentencing a defendant, the court *may* permit the defendant or his counsel to read the presentence report. *The court shall withhold from the defendant that part of the report which contains a recommendation as to sentencing and may exclude any part of the report that contains [certain prescribed material].*"

A floor amendment having the effect of changing "may" to "shall" and deleting the underscored second sentence was adopted. Conformably, subsection (e) was also amended to remove any notion that defendant's reading a report was permissive; similarly, proposed subsection (f), dealing with summarizing certain information not to be

disclosed in full, was deleted. The remaining two subsections were redesignated accordingly and adopted without amendment. As thus amended H.B. No. 1178 passed second reading.

After an uneventful passage on third reading, H.B. 1178 was sent to the Senate, which ultimately passed it without amendment on May 25, 1983. The Governor approved the bill June 15, 1983, along with other pieces of legislation, one of which we now turn to examine.

The Governor also approved Acts 1983, 68th Leg., ch. 303, p. 1568—"The DWI Bill," Senate Bill No. 1. Section 9 of that Act reenacts as (a) the exact content of former Section 4, Article 42.12, supra, and adds as (b) a new requirement for evaluating an accused charged with an offense under Article 6701*l*–1, R.C.S., as amended, that is punishable under subsection (c) thereof. Senate Bill No. 1, as amended, was finally passed when both House and Senate adopted the conference committee report on the bill May 27, 1983—two days later than passage of H.B. 1178.

▮ The Code Construction Act provides, with an exception not here applicable, that if amendments to the same statute are enacted at the same session, one making no reference to the other, they shall be harmonized if possible to give effect to each; but if irreconcilable, "the latest in date of enactment prevails," Article 5429b–2, § 3.059(b), V.A.C.S. For reasons about to be explicated, we are unable to harmonize § 4 as reenacted by section 9 of Chapter 303 (S.B. 1) and § 4 as enacted by section 1 of Chapter 343 (H.B. 1178), and we find them irreconcilable.

At the outset, we observe that a basic concept of H.B. 1178 is seriously flawed. That is, the purpose and function of a presentence investigative report are to provide such information to the court as will, in the words of § 4 (b)(2), "permit the meaningful exercise of *sentencing discretion*" by the judge; and there are the

---

3. Patently, the 1981 amendment to Article 37.07, supra, was designed to meet the thrust of the

dissenting opinion in *Mason v. State,* 604 S.W.2d 83, 85–91 (Tex.Cr.App.1980).

allusions to things done "prior to the imposition of sentence by the court" and "(b)efore sentencing a defendant" in § 4 (a) and § 4 (d), respectively. The patent flaw in all this is that there is no discretion to be exercised by judge or court in sentencing. A sentence is simply that part of a judgment ordering "that the punishment be carried into execution in the manner prescribed by law," Article 42.02, V.A.C.C.P. It automatically follows from whatever punishment has been assessed, except when probation has been granted sentence is not imposed unless and until probation is revoked. Articles 42.01, § 1, 10 and 42.02, *id.*

As the dissenting opinion in *Mason v. State,* supra, points out, "a presentence investigation report is a creature of the adult probation and parole law, *id.,* § 4, intended exclusively for use by the trial court alone in order to determine what terms and conditions of probation are appropriate to the particular defendant ... as much as whether to allow probation in the first place," *Mason,* 87–88. While Article 37.07, § 3 (d) has since allowed a trial judge to resort to such an investigative report in determining what punishment to assess, as well as considering probation, neither the Legislature nor this Court has ever suggested that report is relevant to routine imposition of a sentence.

Moreover, a literal reading of subsection (a) compels the conclusion that a trial court is required to order a presentence investigative report in every criminal case—regardless of whether the case is tried by jury or before court (unless a condition allowing the alternate procedure provided in subsection (b) is met).[4] Such a broad mandate as that simply cannot be squared with the modest grant of discretionary authority reenacted in § 4 of S.B. 1.

Were we to read "sentence" and "sentencing," as used in H.B. 1178, to mean "punishment assessed" alone by a judge of the court, the same fundamental conflict with § 4 (a) continues to exist, albeit of lesser impact. A judge is still *required to direct* a probation officer to investigate and prepare a presentence report in each case tried before the court, if not first excused from doing so by ripening of one or the other conditions precedent in subsection (b). We find that conflict is irreconcilable.

Subsection (c) of H.B. 1178 prohibits a court from inspecting a presentence investigative report it has ordered, and provides that a report may not be disclosed "to any person"—unless the subject of the report pleads guilty or nolo contendere or is convicted, *or* unless *the defendant authorizes the judge* in writing to inspect the report. The first contingency presupposes an investigation has been made and a report prepared prior to trial; the second requires leave of an accused in order for a judge to look at the report.[5]

Yet, under § 4 (a) of S.B. 1, in context of related sections of Article 42.12, a court

---

4. The first condition, that the court agrees with a request by an accused that a report not be made, is understandable. The second, however, is a puzzler: the court must find and "explain ... on the record" that there is "sufficient information in the record to permit the meaningful exercise of sentencing discretion." If a judge is presiding over a routine trial of a negotiated guilty or nolo contendere plea, perhaps terms and conditions of the plea bargain agreement, itself, may constitute "sufficient information," but it is difficult to conceive how evidence of guilt in other kinds of trials would alone suffice, given preference in the law for individualized consideration of, *inter alia,* prior criminal record, general reputation and character of each offender. Article 37.07, § 3 (a), V.A.C.C.P. Thus, in the latter situations a likelihood of many such findings seems remote.

5. In the case at bar Judge McDonald resolves this second requirement by providing in his "Guidelines," under "APPLICATION FOR PROBATION AND/OR PUNISHMENT BY THE COURT," the following directive:

"In the event the defendant desires to make application for probation and/or punishment by the Court, the defendant and his/her attorney *must* execute the Defendant's Consent to the Court's Inspection of Presentence Report (see Article 42.12, Sec. 4(b)(2) [sic] ) prior to Plea of Guilty, Nolo Contendere, or Finding of Guilt, and the defendant must then report to the Adult Probation Department with said form to make application for probation *on or before the date set for arraignment.* [Emphasis in original]"

does not direct an investigation be made and a report is not done until after an accused has been "convicted," punishment has been assessed (except now when the judge has ordered a report pursuant to Article 37.07, § 3 (d) and then assesses punishment) and the matter of probation awaits consideration by the court. See §§ 3, 3c and 3e (a), and authorities cited and discussed in *Mason v. State*, supra, at 86–88 and 89. According to § 4 (a), the report belongs to the court, and only "upon request" are defendant, counsel for defendant and prosecuting attorney "afforded an opportunity to see a copy of the report."

We are unable to harmonize competing provisions that a presentence investigative report be done before trial, on the one hand, and after conviction, on the other, and find they, too, are irreconcilable. Similarly, a written report cannot be under the control of an accused for a period of time, such as to prevent the judge who ordered it prepared from inspecting the report, yet be kept from the eyes of accused and his attorney until afforded an opportunity to see it "upon request." [6]

Only two subsections of H.B. 1178 have not been mentioned: (f) and (g) of section 4. They are innocuous and in harmony with provisions of § 4 (a) of S.B. 1. One tells a court to allow the State the same information made available to an accused, and the last directs a probation officer to send a copy of a presentence report to an institution to which the defendant is committed. Although H.B. 1178 does contain a provision for severability, § 3.12 of the Code Construction Act, supra, provides a general severability clause: Invalidity of any provision of a statute does not affect other provisions which can be given effect without the invalid provisions. Subsections (f) and (g) may be given effect when considered in pari materia with § 4 (a) of S.B. 1.

■ Since we have found invalid all material provisions of § 4 contained in H.B..

1178 which base Respondent's "Amended Procedures for Sentencing Guidelines" of January 27, 1984, the guidelines are without support in law and fall for the reasons stated in *Bryan v. McDonald*. Respondent did not comply with the relief conditionally granted therein, so we have no alternative but to order that the Clerk of this Court issue appropriate writs of mandamus and prohibition.

Accordingly, it is ordered and adjudged and decreed that Respondent be, and he is hereby, directed to set aside and vacate the January 27, 1984 "Amended Procedures for Sentencing Guidelines;" and it is further ordered, adjudged and decreed that Respondent be, and he is hereby ordered to cease and desist from engaging in and imposing each and every practice condemned by this Court in *Bryan v. McDonald*, including inspecting, examining or reviewing contents of presentence investigative reports prior to determinations of guilt, and issuing proposed assessments of punishment prior to convening and receiving evidence at a punishment hearing pursuant to Article 37.07, § 3 (d), V.A.C.C.P.

It is so ordered.

---

**6.** Well aware that the next subsection in H.B. 1178 directs a trial court to permit an accused and his attorney to read a presentence report "(b)efore sentencing," and applying that language literally, we gather until that point in the proceedings they have not been afforded an opportunity to see it, even "upon request." In that regard, then, we find yet another conflict.