**Affirmed and Majority and Dissenting Opinions filed December 14, 2023.**



In The

# 𝕱𝕺𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-20-00496-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**SANITHA LASHAY HATTER, Appellee**

**On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 1667833**

## M A J O R I T Y   O P I N I O N

The trial court granted Appellee Sanitha Lashay Hatter's "Motion for Specific Performance" and dismissed her charge for felony assault of a public servant. In this appeal, which returns to us after a remand from the Court of Criminal Appeals, we address issues unaddressed in our previous opinion: whether a promise of dismissal constitutes an enforceable plea bargain agreement and, if so, the terms of that agreement, whether either party breached the agreement, and whether Appellee was entitled to specific performance. *See State*

*v. Hatter*, 665 S.W.3d 584, 595 (Tex. Crim. App. 2023).

For the reasons below, we affirm the trial court's order dismissing the felony charge.

## BACKGROUND

In the underlying proceeding, an indictment was filed charging Appellee with felony assault of a public servant. *See* Tex. Penal Code Ann. § 22.01(b-2). In January 2020, the State filed a "Motion to Dismiss" requesting the trial court dismiss the felony charge. In the section of the motion entitled "Explanation," the State noted that it "reserves the right to refile." The trial court granted the motion to dismiss.

In March 2020, the State re-filed the felony assault charge against Appellee. Appellee filed a "Motion for Specific Performance" requesting that the trial court enforce the felony prosecutor's "promise of a dismissal." In support of her motion, Appellee asserted that the felony prosecutor made "several representations to the Defense that no refile would occur," including "multiple statements guaranteeing a dismissal of this case 'no matter what,' that the State and the Defense had a 'gentlemen's agreement,' and that the State promised to not refile the case against [Appellee]."

Appellee also filed an unsworn declaration by defense counsel. In relevant part, the declaration states:

> The offer from the State to my client in our felony case was that in exchange for a plea of guilty in her Driving While Intoxicated case(s), her Assault of a Public Servant case would be dismissed. Another attorney represented [Appellee] on both of her misdemeanor cases. That attorney did not want to plea [Appellee] to her Driving While Intoxicated charges so that she could get a dismissal on her felony case. Because [Appellee's] felony disposition was contingent on her misdemeanor dispositions and her misdemeanor attorney's

2

unwillingness to negotiate a plea with that agreement, I felt [Appellee] was being treated unfairly.

I spoke on many occasions to the chief prosecutor on the felony case, Mr. James O'Donnell. Mr. O'Donnell understood the problem and unfairness surrounding the misdemeanor disposition affecting [Appellee's] felony disposition. After speaking to him on many occasions (of which I do not remember the dates), we were able to come to an agreement. Mr. O'Donnell agreed that regardless of the disposition of the misdemeanor Driving While Intoxicated cases, he would dismiss the felony Assault of a Peace Officer. He made multiple promises to me that he would not only dismiss the felony case regardless of the misdemeanor dispositions, but that he would promise to never re-file the felony case. He made this guarantee to me multiple times while in the 230th courtroom at 201 Caroline. . . . Mr. O'Donnell told me that he would give the reason of "other" on the dismissal and would write "subject to re-file" although he again promised that he would not do so and no one else would either.

Continuing on, defense counsel's declaration states that Appellee's misdemeanor charges were dismissed "because both of those cases contained faulty blood vials." Defense counsel asserted that, following these dismissals, O'Donnell's supervisors ordered him to re-file the felony charge against Appellee.

The trial court held a hearing on Appellee's motion in June 2020. Testifying at the hearing, O'Donnell said Appellee's felony case was set for trial prior to the disposition of her misdemeanor charges and the State offered to "dismiss the felony case if [Appellee] pled on the [misdemeanor] DWI cases." According to O'Donnell, at this time he was "under the impression that the DWI cases would be worked out" and "didn't feel it was appropriate to try [Appellee's] [felony] case when [he] had made the — extended the offer to dismiss the felony if [Appellee] had pled on the DWIs." In sum, O'Donnell expected "that there would be a plea which would effectively satisfy the terms of the agreement that we had extended to — that the State had extended to [Appellee]."

3

O'Donnell testified that he "remember[ed]" his discussions with defense counsel "regarding the case and that [he] would not re-file the case and that [he] would not instruct any of [his] prosecutors to re-file the case." O'Donnell said he could not recall "the exact words that were used" but "remember[ed] telling [defense counsel] that [his] intention was to dismiss the case and that it was not [his] intention to re-file this case." O'Donnell did not recall using the words "gentlemen's agreement" or "promise" in his conversations with defense counsel. At the time the felony charge was dismissed, O'Donnell said "the prosecutors in the misdemeanor court were in the process of evaluating their cases" against Appellee.

According to O'Donnell, it was not his decision to re-file the felony charge against Appellee; rather, that decision was made by O'Donnell's supervisors. O'Donnell said the complaining witness in the felony assault case "brought it to the DA's office's attention to re-file" the case.

After hearing the evidence and the argument of counsel, the trial court found O'Donnell to be "an honorable, forthright, and honest prosecutor"; it found defense counsel's declaration to be true and correct; and it found that O'Donnell promised to dismiss the case without re-filing but simply did not remember making that promise. The trial court granted the motion for specific performance and declared on the record that the case "is dismissed." On the signed order granting the motion, the trial court wrote, "State is ordered to dismiss."[1]

The State filed both a direct appeal and a petition for writ of mandamus. In our majority opinion, we affirmed the trial court's order dismissing the felony

---

[1] We disagree with our dissenting colleague's assertion that this summary of the record constitutes a "gross[] overstate[ment]." *See* Dissenting Op. at 3. This summary accurately quotes the record from the hearing on Appellee's motion for specific performance.

4

charge and denied the State's petition for writ of mandamus as moot. *See State v. Hatter*, 634 S.W.3d 456 (Tex. App.—Houston [14th Dist.] 2021), *rev'd*, 665 S.W.3d 584 (Tex. Crim. App. 2023). We reasoned that O'Donnell's exchange with defense counsel constituted an enforceable immunity agreement. *See id*. at 461-63. Justice Jewell dissented, concluding that the trial court's order granting Appellee's motion for specific performance was in error. *See id*. at 463-470.

The Court of Criminal Appeals reversed our judgment and remanded the case. *See Hatter*, 665 S.W.3d at 584. Holding that "the agreement between Appellee and the State was in the nature of a plea bargain agreement — not an immunity agreement," the Court of Criminal Appeals "remand[ed] this matter to the court of appeals to determine whether the trial court's order may be sustained by a theory of law applicable to this case." *Id*. at 586.

## ANALYSIS

We turn to the remaining issue as narrowed by the Court of Criminal Appeals: whether Appellee and the State entered into a plea bargain agreement that may be enforced on this record.

Plea bargains are an integral part of the criminal justice system. *See Brady v. United States*, 397 U.S. 742, 752 n.10 (1970); *Gutierrez v. State*, 108 S.W.3d 304, 306 (Tex. Crim. App. 2003) (en banc). "At its core, a plea bargain is a contract between the state and the defendant." *Moore v. State*, 295 S.W.3d 329, 331 (Tex. Crim. App. 2009). "As a contract, once both parties have entered knowingly and voluntarily into a plea bargain, they are bound by the terms of that agreement once it is accepted by the judge." *Id*.; *see also Swanson v. State*, 692 S.W.2d 548, 549 (Tex. App.—Houston [14th Dist.] 1985, no pet.) ("When a defendant agrees to the terms of a plea bargain agreement[,] he is deemed to have entered into the agreement knowingly and voluntarily. In effect he becomes a

5

party to a contract, and both he and the state are bound to carry out each side of the bargain.").

Plea bargain agreements may contain a "wide variety of stipulations and assurances" that allow the State to tailor conditions in order to reach an agreement with the defendant. *State v. Moore*, 240 S.W.3d 248, 251 (Tex. Crim. App. 2007); *see also, e.g.*, *Banks v. State*, No. 14-13-00971-CR, 2013 WL 6206278, at *1 (Tex. App.—Houston [14th Dist.] Nov. 26, 2013, no pet.) (per curiam) (mem. op., not designated for publication) (under terms of plea agreement, the State agreed to dismiss one indictment in exchange for the appellant's guilty plea with respect to a second indictment); *Rogers v. State*, No. 14-01-01222-CR, 2002 WL15809, at *1 (Tex. App.—Houston [14th Dist.] Jan. 3, 2002, no pet.) (per curiam) (mem. op., not designated for publication) (under terms of plea agreement, the appellant pleaded guilty and waived his right to appeal in exchange for a six-year sentence). Trial courts have broad discretion in determining whether or not to accept a plea bargain agreement. *State ex rel. Bryan v. McDonald*, 662 S.W.2d 5, 9 (Tex. Crim. App. 1983) (en banc) ("the trial court remains free in every or any case to refuse to allow plea bargaining or to reject a particular plea bargain").

Once a trial court has accepted a plea agreement, it has a "ministerial, mandatory, and non-discretionary duty" to enforce the plea bargain it approves. *Perkins v. Court of Appeals for the Third Supreme Jud. Dist. of Tex.*, 738 S.W.2d 276, 284-85 (Tex. Crim. App. 1987) (en banc). Once approved by the trial court, the defendant may insist on the benefit of his plea agreement with the State. *Blanco v. State*, 18 S.W.3d 218, 220 (Tex. Crim. App. 2000) (en banc). If the agreement can be enforced, the defendant is entitled to seek specific performance of its terms; if the agreement cannot be enforced, the defendant is entitled to withdraw his plea. *Bitterman v. State*, 180 S.W.3d 139, 143 (Tex. Crim. App.

6

2005).

General contract law principles apply to the review of issues involving the content of a plea agreement in a criminal case. *Ex parte Moussazadeh*, 64 S.W.3d 404, 411 (Tex. Crim. App. 2001), *overruled on other grounds by Ex parte Moussazadeh*, 361 S.W.3d 684 (Tex. Crim. App. 2012). We therefore look to the written plea agreement, if any, as well as the record of the underlying proceedings to determine the terms of the agreement and discern the parties' obligations. *See id*. at 411-12; *see also, e.g.*, *Gipson v. State*, No. 06-20-00066-CR, 2020 WL 7702188, at *3 (Tex. App.—Texarkana Dec. 29, 2020, no pet.) (mem. op., not designated for publication) ("Since there is no written plea agreement, we must look to the formal record to discern the parties' intent regarding whether [the appellant's] guilty plea was the result of a plea agreement.").

A valid contract requires proof of the following: (1) an offer was made; (2) the other party accepted in strict compliance with the offer's terms; (3) the parties had a meeting of the minds on the contract's essential terms; (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). These elements are the same regardless of whether the contract is written or oral. *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The existence of an oral contract generally is a question of fact for the factfinder. *See Ward v. Ladner*, 322 S.W.3d 692, 698 (Tex. App.—Tyler 2010, pet. denied); *see also Shaw v. Palmer*, 197 S.W.3d 854, 856 (Tex. App.—Dallas 2006, pet. denied) ("Whether parties intended to enter into a binding contract is generally a question of fact.").

Turning to the present case, the parties did not cite — and our research did not find — any criminal cases with analogous facts, whereby the parties apparently

reached an agreement but one party reneged on that agreement before the trial court's approval was secured. But read as a whole, we conclude the record supports finding that the trial court (1) approved the parties' plea agreement as it was described by Appellee's defense counsel and O'Donnell, and (2) ordered specific performance of that agreement.

In her "Motion for Specific Performance," Appellee asserted that the parties reached an agreement pursuant to which her felony assault charge would be dismissed in exchange for her guilty plea to the DWI charges. Appellee included an affidavit from her defense counsel reiterating this agreement between Appellee and the State.

At the hearing on the motion, the trial court heard testimony from O'Donnell regarding his conversations with Appellee's defense counsel. According to O'Donnell, the State offered to "dismiss the felony case if [Appellee] pled on the [misdemeanor] DWI cases" and "remember[ed] telling [defense counsel] . . . that it was not [his] intention to re-file the case." Evidencing his understanding that Appellee accepted the terms of the offer, O'Donnell testified that he was "under the impression" that Appellee would eventually plead guilty to the DWI charges. *See Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 26 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("To form a binding contract, the party to whom the offer is made must accept such offer and communicate such acceptance to the person making the offer."); *see also Acceptance*, Black's Law Dictionary (11th ed. 2019) ("An offeree's assent, either by express act or by implication from conduct, to the terms of an offer in a manner authorized or requested by the offeror, so that a binding contract is formed."). Similarly, in defense counsel's declaration (which also was admitted as an exhibit at the hearing on Appellee's motion), defense counsel stated that she had "come to an agreement" with

8

O'Donnell that, "regardless of the disposition of the misdemeanor Driving While Intoxicated cases, [O'Donnell] would dismiss the felony Assault of a Peace Officer." Defense counsel said O'Donnell made "multiple promises" that not only would the felony case be dismissed but that he would "never re-file the felony case." O'Donnell testified that it was not his decision to re-file the felony charge against Appellee and that this decision was made by his supervisors.

Hearing this evidence, the trial court concluded: "[A] promise was made to dismiss this case no matter what. A dismissal was filed. A promise was made not to re-file. It was re-filed. And therefore, I'm granting this motion." These conclusions, in conjunction with the evidence before the trial court, show that the trial court found the requisite elements necessary to form a plea agreement and approved that agreement. *See Brown v. State*, No. 04-03-00006-CR, 2005 WL 1334354, at *3 (Tex. App.—San Antonio June 8, 2005, no pet.) (mem. op., not designated for publication) ("acceptance of a plea agreement can be done implicitly by the trial court simply implementing the agreement"); *see also, e.g.*, *Wright v. State*, 158 S.W.3d 590, 594 (Tex. App.—San Antonio 2005, pet. ref'd) ("We hold that the words used by Judge Chavarria, and the sequence of his actions, evidence his express acceptance and approval of the terms of the plea bargain agreement[.]"). This determination generally is left to the factfinder and, on this record, we conclude the trial court did not abuse its discretion in accepting the parties' plea agreement.[2] *See State ex rel. Bryan*, 662 S.W.2d at 9.

---

[2] As our dissenting colleague points out, at the conclusion of the hearing on Appellee's motion for specific performance, the trial court stated, "I'm not sure [the prosecutor's promise] is a contract. I'm not sure that contract law is something we hear in here." *See* Dissenting Op. at 5. Our dissenting colleague then asks, "[h]ow is it the majority can reasonably construe these statements as an implicit finding that a contract was formed?"

But as discussed above, we apply general contract law principles to issues involving the enforcement and content of plea agreements in a criminal case. *See Ex parte Moussazadeh*, 64

9

The terms of the agreement were clearly delineated: in exchange for the dismissal of the felony charge, Appellee agreed to plead guilty to the two misdemeanor DWIs. This agreement was entered into by O'Donnell, who properly was acting as an agent of the State. *See Expro Americas, LLC v. Sanguine Gas Expl., LLC*, 351 S.W.3d 915, 924 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("An agent acting within the scope of his apparent authority binds the principal as if the principal itself had taken the action."). The evidence before the trial court showed that the State, acting via other agents, breached these terms by re-filing the felony charge against Appellee. Therefore, fulfilling its "ministerial, mandatory, and non-discretionary duty" to enforce the plea bargain it approved, the trial court did not err by enforcing these terms and ordering the dismissal of Appellee's felony charge. *See Perkins*, 738 S.W.2d at 284-85.

Arguing against this conclusion, the State asserts that Appellee "sought to use a fluke in the trial court scheduling process and the felony prosecutor's sense of fairness to walk away scot free from multiple charges." Specific performance only is permissible, the State argues, when "the complaining party has fulfilled its contractual obligations."

But Appellee's failure to fulfill her contractual obligations does not rest with her — rather, it stems from the misdemeanor prosecutor's unilateral decision to dismiss Appellee's DWI cases. As the record shows, this action was taken without any involvement from Appellee or defense counsel. Accordingly, Appellee was prevented from holding up her end of the bargained-for agreement because the *State* made that performance impossible.

---

S.W.3d at 411; *see also, e.g.*, *Wright*, 158 S.W.3d at 594-95. As the Court of Criminal Appeals recognized, the trial court's failure to apply the proper legal framework for this determination does not foreclose us from analyzing whether its subsequent enforcement of the prosecutor's promise of dismissal is correct under contract law principles. *See Hatter*, 665 S.W.3d at 588-89, 595.

Resolution of this quandary is found with reference to general contract law principles. *See Ex parte Moussazadeh*, 64 S.W.3d at 411. Specifically, "when the obligation of a party to a contract depends upon a certain condition being performed, and the fulfillment of the condition is prevented by the act of the other party, the consideration is considered fulfilled." *Danford Maint. Serv., Inc. v. Dow Chem. Co.*, No. 14-12-00507-CV, 2013 WL 6388381, at *9 (Tex. App.—Houston [14th Dist.] Nov. 21, 2013, pet. denied) (mem. op.); *see also Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 519 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("Generally, a party who 'prevents or makes impossible' the occurrence of a condition precedent upon which its liability under a contract depends cannot rely on the nonoccurrence to escape liability."); *Tex-Craft Builders, Inc. v. Allied Constructors of Houston, Inc.*, 465 S.W.2d 786, 791 (Tex. App.—Tyler 1971, writ ref'd n.r.e.) ("where a party in whose favor something is to be done prevents that performance and the other party is not in default, a recovery may be had as if the act had been performed").

Here, Appellee's obligation — *i.e.*, pleading guilty to the DWI charges — depended upon a certain condition, namely, being charged with those offenses. But the charges were dismissed before Appellee was presented with the opportunity to plead guilty, thus, preventing her performance. These charges were dismissed by the misdemeanor prosecutor who, like O'Donnell, operated as an agent of the State. *See Expro Americas, LLC*, 351 S.W.3d at 924. Accordingly, any consideration Appellee was required to provide to render the agreement enforceable was "considered fulfilled." *See Danford Maint. Serv., Inc.*, 2013 WL 6388381, at *9.

In sum, given that trial courts have broad discretion in determining whether to accept a plea bargain agreement and that the existence of a plea agreement is an

issue of fact (*see State ex rel. Bryan*, 662 S.W.2d at 9; *Ward*, 322 S.W.3d at 698), we conclude that the record does not show the trial court erred in granting Appellee's motion for specific performance. We overrule the State's sole issue on appeal.

## CONCLUSION

We affirm the trial court's order granting Appellee's "Motion for Specific Performance."


/s/     Meagan Hassan
Justice


Panel consists of Justices Jewell, Bourliot, and Hassan (Jewell, J., dissenting). Publish — Tex. R. App. P. 47.2(b).