02-08-382-CR.REMAND









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NO. 02-08-00382-CR

 

 


 
 
 George GAAL
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 367th District Court OF Denton COUNTY

----------

MEMORANDUM OPINION ON REMAND[1]

----------

          Appellant George Gaal appeals his felony
conviction for driving while intoxicated (DWI).[2] 
In our prior opinion in this case, we sustained appellant’s fourth point, in
which he argued that the trial judge should have been recused.  See Gaal v.
State, No. 02-08-00382-CR, 2010 WL 323574, at *4 (Tex. App.—Fort Worth Jan.
28, 2010) (not designated for publication), rev’d, 332 S.W.3d 448 (Tex.
Crim. App. 2011).  However, the court of criminal appeals reversed our decision
and remanded the case so that we may consider appellant’s remaining points that
we did not address in our original opinion.  Gaal, 332 S.W.3d at 460.  For
the reasons stated below, we overrule those points and affirm the trial court’s
judgment.

Background Facts

          Near midnight on September 23, 2007, Gayle
Cook was riding in a pickup with her husband on Milam Road toward Interstate 35
when she spotted a truck stopped in the middle of the road and saw appellant on
the ground in front of the truck.  It appeared to Cook that appellant’s truck
had hit a guardrail and was damaged.  Cook approached appellant to ask him if
he was okay, but appellant was disoriented and did not appropriately answer
Cook’s questions.  Cook and her husband went to a nearby truck stop and called
911 on her cellular phone, but while they were doing so, appellant began to
drive away.

          Cook and her husband followed appellant, who
was driving slowly and swerving.  Appellant eventually drove into a ditch, but
then he drove back onto the road very quickly before he pulled into a parking
lot and stopped his truck.  Cook had continued her contact with 911, and a
Denton police officer eventually arrived at the parking lot and approached appellant’s
truck.  The officer noticed that appellant had slurred speech, that he smelled
like alcohol, and that he had bloodshot eyes.  Another Denton police officer
arrived at the parking lot and asked appellant to take a standardized field
sobriety test and two nonstandardized tests, all of which he failed.  The
officer arrested appellant and found an empty bottle of Crown Royal and two empty
beer bottles in his truck.

          In December 2007, a Denton County grand jury
indicted appellant for DWI. The indictment alleged that appellant had two prior
DWI convictions.  The parties filed various pretrial documents, and appellant’s
trial began in August 2008.  Appellant initially pled not guilty, but after the
jury was selected, appellant changed his plea to guilty.

          The parties presented evidence concerning appellant’s
punishment, and appellant testified and asked the jury to place him on
community supervision.  After the parties presented closing arguments, the jury
assessed appellant’s punishment at ten years’ confinement.  Appellant filed a
motion for new trial, but the trial court denied the motion.  Appellant subsequently
filed his notice of appeal.

The Voluntariness
of Appellant’s Guilty Plea and the Trial Court’s Compliance with Statutorily
Required Admonishments

 

          In his first point, appellant contends that
his guilty plea is involuntary because he did not receive proper constitutional
or statutory admonishments when he made the plea.  Just before the parties’
opening statements, in the presence of the jury, appellant pled guilty.[3] 
The following colloquy then occurred:

          THE COURT:  All right.

          Mr. Gaal, is that your wish, to
plead guilty?

          DEFENDANT:  Yes, Your Honor.

          THE COURT:  And you are pleading
guilty?

          THE DEFENDANT:  Yes, Your Honor.

          THE COURT:  Are you pleading
guilty because you are guilty and for no other reason?

          DEFENDANT:  Yes, Your Honor.

          After the State called several witnesses and
rested its case, appellant judicially confessed to DWI, signed plea paperwork,
received admonishments about his constitutional and statutory rights from the trial
court, and told the court that he did not have any questions about the
admonishments or his guilty plea.[4]
 He affirmed in writing that he was aware of the consequences of his plea.  He also
affirmed that he had waived his rights “voluntarily, knowingly, and
intelligently.”  He told the trial court orally that he had discussed the plea
paperwork with his counsel, and his counsel confirmed in writing that he had
consulted appellant about his guilty plea.  Appellant orally recognized that he
had waived a jury trial concerning his guilt.  The trial court asked him if he
needed “any additional time to speak with [his] attorneys” about the plea, and
appellant said, “No, sir.”  Despite these facts, appellant asserts that the
trial court’s admonishments and his waiver of rights were not sufficient
because they did not occur when he pled guilty but instead occurred hours after
the plea.

Constitutional admonishments and voluntariness

          “Waivers of constitutional rights not only
must be voluntary but must be knowing, intelligent acts done with sufficient
awareness of the relevant circumstances and likely consequences.”  Brady v.
United States, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970).  In
appellant’s argument that he did not receive timely constitutional
admonishments to make him aware of the effects of his guilty plea, he
relies primarily on Boykin v. Alabama, in which the United States Supreme
Court held that when a defendant pleads guilty, the record must affirmatively
disclose that the plea was “voluntarily and understandingly entered,” and that
courts may not “presume a waiver of . . . important [constitutional] rights
from a silent record.”  395 U.S. 238, 243–44, 89 S. Ct. 1709, 1712–13 (1969); see
Aguirre-Mata v. State, 125 S.W.3d 473, 475 (Tex. Crim. App. 2003) (“Boykin
did not specifically set out what due process requires to be ‘spread on the
record’ except to say generally that state courts should make sure that a
guilty-pleading defendant ‘has a full understanding of what the plea connotes
and of its consequence.’”) (footnote omitted); Fuller v. State, 253
S.W.3d 220, 229 (Tex. Crim. App. 2008) (relating that Boykin’s
requirement of requiring an affirmative showing of voluntariness protects a
defendant’s right of due process), cert. denied, 129 S. Ct. 904 (2009). 
The Court in Boykin recognized three critical constitutional rights that
a guilty plea waives:  the privilege against compelled self-incrimination, the
right to a trial by jury, and the right to confront one’s accusers.  395 U.S. at
243, 89 S. Ct. at 1712.

          A few
years ago, the court of criminal appeals examined a case in which a defendant,
who had been charged with five counts of aggravated sexual assault, pled guilty
before a jury but did not receive express constitutional admonishments at the
time of the plea (or any time thereafter).  See Gardner v. State, 164
S.W.3d 393, 394 (Tex. Crim. App. 2005).[5] 
The defendant’s counsel, however, “referred to [the defendant’s] guilty plea
several times during the punishment phase” and stressed to the jury throughout
various parts of the trial that the defendant had taken responsibility for the
offense.  Id. at 395–97.  The jury assessed punishment at
thirty-five years’ confinement on each count.  Id. at 397.  The
defendant, citing Boykin, complained on appeal about not having received
the admonishments.  Id.  The court of criminal appeals, held, however,
that the record adequately showed

that appellant understood that he was
waiving [his constitutional] rights when he pled guilty.  This may be inferred,
in part, from appellant’s counsel’s statements during the punishment phase
mentioning that appellant would testify even though he did not have to under
the Fifth Amendment and that appellant’s guilty plea saved the victim from
having to testify and saved the jury from the “grueling experience” of
determining appellant’s guilt.

          The voluntary nature of
appellant’s guilty plea is further shown in the record by the overwhelming
evidence that appellant’s guilty plea was part of a strategy (which we may also
infer was done in consultation with competent counsel) to persuade the jury to
grant appellant probation.  Unlike this case, the record in Boykin was
silent on whether the defendant’s guilty plea was part of some trial strategy.

Id. at
399 (citations omitted).

          The
voluntary nature of appellant’s guilty plea may likewise be shown by the record’s
indication that the plea was part of a trial strategy.  From the beginning of
his own counsel’s voir dire, appellant’s goals were to minimize the issue of
his guilt and to extensively focus on the issue of punishment and the possibility
that the jury would give him a low term of confinement or place him on
community supervision.[6] 
For example, just after appellant’s guilty plea, during his counsel’s opening
statement, counsel emphasized that appellant had pled guilty.  Appellant’s counsel
declined to ask any questions of Cook when she recounted the events that
occurred on the night of appellant’s DWI, and counsel asked scant questions of
the other witnesses who testified about the facts of appellant’s offense.[7] 
When appellant testified, he confirmed his guilt, told the jury that he is an
alcoholic and that he views alcohol as a “demon,” expressed that he is a
“changed person” since the time of his offense, and said, “[W]ell, I need help,
and I feel like the only way that I’ll be able to get help is probation and to
be able to keep going and doing the things that I’ve been doing for the last
several months.”  Finally, during his closing argument, appellant’s counsel
said, “Now, [appellant] has come to this court today, and he has admitted he
has done this crime.  He’s taken responsibility . . . .”

          As in Gardner,
therefore, we hold that the record implies, through appellant’s trial strategy
of seeking community supervision, that appellant understood the effects of his
plea when he made it even though he had not expressly been informed (at least
by the trial court) of those effects at that time.  See id.; see also
Vasquez v. State, 522 S.W.2d 910, 912 (Tex. Crim. App. 1975) (stating that
the “failure to give [admonishments regarding the right to confront witnesses
or the right against compelled self-incrimination] does not invalidate a plea
of guilty otherwise freely and voluntarily made”); Slaughter v. State, No.
02-07-00050-CR, 2007 WL 3120688, at *5 (Tex. App.—Fort Worth Oct. 25, 2007, no
pet.) (mem. op., not designated for publication) (relying on Gardner to
overrule an appellant’s issue about the lack of express constitutional
admonishments in conjunction with a guilty plea when the record showed that the
plea was part of a trial strategy).  And unlike in Gardner, this
implication is confirmed by the additional fact that appellant actually
received all required admonishments and expressly waived his constitutional
rights at a time in which he could have withdrawn his plea.  See Murray v.
State, 302 S.W.3d 874, 883 (Tex. Crim. App. 2009) (explaining that when a
defendant pleads guilty in front of a jury, the defendant may withdraw the plea
at any time before the jury retires to consider its verdict); Abrego v.
State, 977 S.W.2d 835, 837 (Tex. App.—Fort Worth 1998, pet. ref’d)
(describing the right to withdraw a guilty plea before the jury retires as “unqualified”).

          Furthermore,
appellant had notice of the three constitutional rights mentioned in Boykin
beyond the admonishments included in the plea paperwork.  Before voir dire, in
appellant’s presence, the trial court told the jury about the Fifth Amendment,
explaining that “[appellant] cannot be made to testify by anybody . . . unless
he determines he wants to testify.”[8] 
Later, before appellant testified, the trial court asked appellant whether he
had talked with his attorneys about his Fifth Amendment right against compelled
self-incrimination, and he confirmed that he had spoken with them.  Next,
appellant’s knowledge of his right to confront and cross-examine witnesses may
be inferred by the fact that his counsel actually did so.  See Johnson
v. State, 501 S.W.2d 306, 307 (Tex. Crim. App. 1973).  And appellant must
have been aware of his right to a jury trial since he exercised it when he
announced his guilty plea in front of the jury and continued to exercise it, as
to a determination of his punishment, after announcing the plea.  See id.;
see also Williams v. State, 674 S.W.2d 315, 318 (Tex. Crim. App. 1984) (stating
that a “plea of guilty before a jury is a trial by jury and does not constitute
waiver of trial by jury”).

          For all of these reasons, we overrule
appellant’s first point to the extent that appellant contends that the trial
court erred by not giving him express constitutional admonishments at the time
that he pled guilty.

Statutory admonishments

          Appellant also argues that the trial court
erred by failing to give him statutory admonishments at the time that he pled
guilty.  Article 26.13 of the code of criminal procedure requires a trial
court, prior to accepting a guilty plea, to notify a defendant of various facts
and conditions related to the plea.  See Tex. Code Crim. Proc. Ann. art.
26.13 (West 2009); Bessey v. State, 239 S.W.3d 809, 812 (Tex. Crim. App.
2007).  The requirements of article 26.13 apply to a guilty plea that is made
before a jury.  See Palacios v. State, 556 S.W.2d 349, 352 (Tex. Crim.
App. 1977).  The trial court’s failure to comply with such requirements may be
raised for the first time on appeal.  See Bessey, 239 S.W.3d at 812
(characterizing the right to admonishments under article 26.13 as a “waivable-only
right,” meaning that it “cannot be forfeited and may be raised for the first
time on appeal unless it is expressly waived”).

          Assuming that the trial court erred by
giving appellant his statutory admonishments after he pled guilty and after the
State had rested its case,[9]
that error must be reviewed under the nonconstitutional harm standard of rule
of appellate procedure 44.2(b).  See Tex. R. App. P. 44.2(b) (stating
that any nonconstitutional error that does not “affect substantial rights must
be disregarded”); Bessey, 239 S.W.3d at 813; Carranza v. State,
980 S.W.2d 653, 657 (Tex. Crim. App. 1998); Fakeye v. State, 192 S.W.3d
112, 113 (Tex. App.—Fort Worth 2006), aff’d, 227 S.W.3d 714 (Tex. Crim.
App. 2007).[10] 
Accordingly, the trial court’s failure to admonish a defendant of a particular
consequence of a plea is harmless when either that consequence does not apply
to the defendant or the record demonstrates that the defendant otherwise had
knowledge of the consequence.  See Bessey, 239 S.W.3d at 813–14; Anderson
v. State, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006) (explaining that “[w]hen
courts have failed to admonish guilty-pleading defendants on the immigration
consequence of conviction, we have held the error was harmless error when the
record showed that a defendant was a citizen of the United States”); Slaughter,
2007 WL 3120688, at *6 (disregarding error under rule 44.2(b) because “most of
the admonishments set forth in article 26.13 [did] not apply to the facts of
th[e] case; the one requirement that [did]—admonishment about the range of
punishment—was discussed in voir dire”).

          The specific admonishments that article
26.13 requires are (1) the range of punishment attached to the offense, (2)
admonishments related to plea bargains, (3) consequences of the plea affecting
a noncitizen, and (4) the fact that sex offender registration requirements may
be imposed following the conviction.  Tex. Code Crim. Proc. Ann. art. 26.13(a);
Bessey, 239 S.W.3d at 812.  In the case before us, appellant’s guilty
plea did not occur because of a plea bargain, appellant was born in Dallas and
is a United States citizen, and DWI is not an offense that requires sex offender
registration.  See Tex. Code Crim. Proc. Ann. art. 62.001(5) (West Supp.
2010).  As for the admonishment concerning the range of punishment, the record
shows that during the voir dire of the jury panel, the prosecutor and appellant’s
counsel separately explained the punishment range for felony DWI as two to ten
years’ confinement.  Thus, we conclude no harm resulted from a lack of an
admonition about the range of punishment when appellant pled guilty.  See
Tex. R. App. P. 44.2(b); Moore v. State, 278 S.W.3d 444, 447–48 (Tex.
App.—Houston [14th Dist.] 2009, no pet.).

          We hold that even if the trial court erred
by giving appellant statutory admonishments after the State rested its case,
that error is harmless and must therefore be disregarded.  See Tex. R. App.
P. 44.2(b).  Thus, we overrule the remainder of appellant’s first point.

The Effectiveness of Appellant’s Counsel

          In his second point, appellant argues that
his trial counsel’s assistance was ineffective because counsel allegedly did
not call a material witness at trial, failed to “recognize [his] lack of normal
cognitive ability,” and failed to adequately convey the State’s plea offer to
him.

Standard of review

          To establish ineffective assistance of
counsel, appellant must show by a preponderance of the evidence that his
counsel’s representation fell below the standard of prevailing professional
norms and that there is a reasonable probability that, but for counsel’s
deficiency, the result of the trial would have been different.  Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas
v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State,
65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999); Hernandez v. State, 988 S.W.2d
770, 770 (Tex. Crim. App. 1999).

          In evaluating the effectiveness of counsel
under the first prong, we look to the totality of the representation and the
particular circumstances of each case.  Thompson, 9 S.W.3d at 813.  The
issue is whether counsel’s assistance was reasonable under all the
circumstances and prevailing professional norms at the time of the alleged
error.  See Strickland, 466 U.S. at 688–89, 104 S. Ct. at 2065.  Review
of counsel’s representation is highly deferential, and the reviewing court
indulges a strong presumption that counsel’s conduct fell within a wide range
of reasonable representation.  Salinas, 163 S.W.3d at 740; Mallett,
65 S.W.3d at 63.  A reviewing court will rarely be in a position on direct
appeal to fairly evaluate the merits of an ineffective assistance claim.  Salinas,
163 S.W.3d at 740; Thompson, 9 S.W.3d at 813–14.  “In the majority of
cases, the record on direct appeal is undeveloped and cannot adequately reflect
the motives behind trial counsel’s actions.”  Salinas, 163 S.W.3d at 740
(quoting Mallett, 65 S.W.3d at 63).  To overcome the presumption of
reasonable professional assistance, “any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.”  Id. (quoting Thompson, 9 S.W.3d at
813).  It is not appropriate for an appellate court to simply infer ineffective
assistance based upon unclear portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

          The second prong of Strickland
requires a showing that counsel’s errors were so serious that they deprived the
defendant of a fair and reliable trial.  Strickland, 466 U.S. at 687,
104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable
probability that, but for counsel’s unprofessional errors, the result of the
proceeding would have been different.  Id. at 694, 104 S. Ct. at 2068. 
A reasonable probability is a probability sufficient to undermine confidence in
the outcome.  Id.  The ultimate focus of our inquiry must be on the
fundamental fairness of the proceeding in which the result is being
challenged.  Id. at 697, 104 S. Ct. at 2070.

Analysis

          Appellant first contends that his trial counsel
was ineffective because counsel did not adequately investigate testimony that
could have been offered by Dr. Carlos Venegas or call Dr. Venegas to testify.  To
obtain relief on an ineffective assistance of counsel claim based on an
uncalled witness, appellant must show that Dr. Venegas was available to testify
and that his testimony would have benefited appellant.  See Ex parte White,
160 S.W.3d 46, 52 (Tex. Crim. App. 2004) (citing King v. State, 649
S.W.2d 42, 44 (Tex. Crim. App. 1983)).

          Appellant called Dr. Venegas to testify in
the hearing on appellant’s motion for new trial.  During this hearing, Dr.
Venegas said that he treated appellant for diabetes and alcoholism and that two
weeks before appellant’s trial, he briefly spoke on the telephone with one of appellant’s
trial attorneys, Brian Bolton, for about five minutes.  During this
conversation, Dr. Venegas stated that he was going to be in California during appellant’s
trial, and Bolton did not seem interested in the conversation.

          Dr. Venegas testified that appellant’s
diabetes and the disease’s complications “may have had something to do with his
lack of judgment and cognitive skills” and that appellant could not understand
this interrelation between alcoholism and diabetes.[11]
 According to Dr. Venegas, Bolton told him that he did not need him to testify
even though Bolton had not heard all of the facts that he could have testified
to.  However, Dr. Venegas told Martha Bowling (an employee at a recovery center
that appellant used) about this information regarding appellant, and Bowling testified
at trial regarding appellant’s outpatient treatment and the treatment that he
could receive through various injections.  Bowling’s testimony included a
substantial part of what Dr. Venegas said he could have testified about if
Bolton had decided to call him as a witness.[12]

          Bowling also testified at the hearing on appellant’s
motion for new trial.  She believed that appellant had trouble understanding
the lessons taught in the outpatient classes he attended.  However, she did not
provide testimony at trial in that regard because Bolton “didn’t seem to want
to hear any details” about her concerns for appellant’s cognitive ability.  Bowling
said that she could have also testified about the potential effect of high
blood sugar on an individual’s judgment.

          Bolton testified that appellant hired him to
develop a strategy of seeking community supervision although the State had
previously offered two years’ confinement (which was the minimum term) during
plea bargain negotiations with appellant’s prior counsel.  Bolton knew that Dr.
Venegas was one of appellant’s physicians, and Bolton knew of the medical
treatment that appellant had received.  Moreover, Bolton understood the
relation between appellant’s diabetes and alcoholism and stated that “[d]iabetic
conditions, you know, always I’ve seen, as far as I can tell with members of
the defense bar, have been an issue for contesting guilt.”  However, he
believed that focusing on appellant’s diabetes in 
relation to appellant’s punishment would have been detrimental because the

jury may have seen it as a smoke screen,
an artificial, shallow excuse.  And I’m certainly not taking away from [appellant’s]
medical issues, but from a jury’s perspective, it’s been my experience and the
lawyers that I know of, diabetic issues are not . . . a punishment issue.  It’s
more of a guilt/innocence thing to attack what we see on the videotape or why
someone performs poorly on field sobriety tests, not is this person eligible
for probation or confinement.

Because Bolton did not believe that presenting
evidence about appellant’s diabetic conditions matched appellant’s strategy of
seeking community supervision, Bolton did not believe that Dr. Venegas’s
testimony could have added anything that could not have been provided by
another witness.  Finally, Bolton testified that he nonetheless considered
obtaining a subpoena for Dr. Venegas “[j]ust to have him [at trial] in case the
bottom fell out . . . .  Just in case.”

          In our ineffective assistance review, we
must exercise substantial restraint before second-guessing or interfering in
the matters of trial strategy and tactics.  Holland v. State, 761 S.W.2d
307, 321 (Tex. Crim. App. 1988), cert. denied, 489 U.S. 1091 (1989); see
Hill v. State, 303 S.W.3d 863, 878–79 (Tex. App.—Fort Worth 2009, pet. ref’d);
Ex parte Jessep, 281 S.W.3d 675, 682 (Tex. App.—Amarillo 2009, pet. ref’d).
 Thus, the mere fact that another attorney might have pursued a different
course will not support a finding of ineffectiveness.  Jessep, 281
S.W.3d at 682.

          Bolton’s testimony shows that he made a
strategic decision after speaking with Dr. Venegas (albeit briefly) that his
testimony would not have been beneficial to appellant’s goal of obtaining
community supervision.  We conclude that appellant has not shown a sufficient
reason on appeal for us to second-guess that decision or to depart from our
usual deference to trial counsel in ineffective assistance claims.  See
Salinas, 163 S.W.3d at 740.

          Moreover, portions of Dr. Venegas’s
testimony might have actually harmed appellant’s case.  Dr. Venegas said that appellant
did not take advised injections related to his alcoholism despite their
availability and despite Dr. Venegas’s repeated phone calls to appellant.  At
one point, the following exchange occurred between the trial court and Dr.
Venegas:

          THE COURT:  Okay.  Now I’m
looking at the indictment here and the case that he was tried for.  He
committed the offense of driving while intoxicated on the 23rd day of September
of 2007.  That was after your treatment.

          THE WITNESS:  The first, yes,
correct.

          THE COURT:  Okay.  So then,
really and truly, either your treatment wasn’t having any effect or [appellant]
wasn’t really caring about the treatment and following the regimen that you
prescribed for him?

          THE WITNESS:  Solely, it would
be a combination of both.  I would have to say a combination of both.

Dr. Venegas’s testimony that appellant had either not
followed or not cared about his treatment could have hampered appellant’s
community supervision strategy.  See White, 160 S.W.3d at 52 (explaining
that the appellant has the burden in an ineffective assistance challenge to
show that an uncalled witness’s testimony would have been beneficial).  Dr.
Venegas’s testimony could have left the jury with the impression that treatment
was not working because appellant became Dr. Venegas’s patient in October 2006,
and appellant’s arrest for the DWI in this case occurred almost a year later.

          Finally, even if we were to conclude that
Bolton should have sought a continuance and attempted to use Dr. Venegas’s
testimony, our review of the record does not show that the totality of appellant’s
counsel’s representation was ineffective.  See King, 649 S.W.2d at 44
(explaining that “[i]neffective assistance of counsel cannot be established by
separating out one portion of the trial counsel’s performance for examination”);
Pieringer v. State, 139 S.W.3d 713, 717 (Tex. App.—Fort Worth 2004, no
pet.).

          For all of these reasons, we hold that appellant
has not sustained his burden of proving by a preponderance of the evidence that
Bolton was ineffective because he did not use greater efforts to explore Dr.
Venegas’s testimony or use the testimony at trial.  See Strickland, 466
U.S. at 687, 104 S. Ct. at 2064.

          Appellant also succinctly asserts in his
brief that his counsel was ineffective by not recognizing his “lack of
cognitive abilities.”  Appellant says in his brief that a defendant’s
“cognitive abilities . . . to even enter a knowing, intentional, and voluntary
plea [are] always at issue.”  Also, some of Dr. Venegas’s testimony at the
hearing on appellant’s motion for new trial attempted to connect appellant’s
alleged cognitive deficiency to his decision to plead guilty.  But the record shows that for strategic reasons,
appellant engineered his decision to plead guilty.  Bolton testified at
the hearing that appellant hired him even though appellant’s previous attorney
had negotiated a plea bargain for two years’ confinement because appellant
wanted a “second opinion” about whether he could be granted community
supervision.  Bolton confirmed during the hearing that he informed appellant
about the risk of rejecting the plea bargain and seeking community supervision
at trial.  Furthermore, Bolton and appellant’s
other trial attorney opined at trial that appellant was capable and competent
to plead guilty.

          Next, appellant’s use of his alleged lack of
cognition to attempt to excuse his DWI would have likely been unsuccessful because
Dr. Venegas admitted that appellant understood that if he consumed excessive
alcohol and drove, he could be arrested for DWI.  And although Dr. Venegas
asserted that the jury may have been more lenient if it knew that appellant
misunderstood his alcoholism, offering such testimony to the jury might have
been incongruous with appellant’s plan to take responsibility for his offense and
seek community supervision.

          We hold that appellant has not shown a
reasonable probability that his counsel’s greater understanding of his apparent
lack of cognitive ability would have changed the outcome of his trial or the
punishment given by the jury.  We overrule that aspect of appellant’s
ineffective assistance claim on that basis.  See Strickland, 466 U.S. at
694, 104 S. Ct. at 2068.

          Finally, appellant argues that his original counsel
was ineffective by allegedly not conveying the complete terms of the State’s
plea bargain offer.  See Ex parte Lemke, 13 S.W.3d 791, 795 (Tex. Crim.
App. 2000) (“Failure of defense counsel to inform a criminal defendant of plea
offers made by the State is an omission that falls below an objective standard
of professional reasonableness.”); Flores v. State, 784 S.W.2d 579, 581
(Tex. App.—Fort Worth 1990, pet. ref’d) (“A defense attorney has an obligation
to fully advise his client of the terms . . . of plea offers extended by the
State.”)  Appellant contends in his brief that “[t]he record seems to
indicate there may have been an acceptance deadline (set by the court) or
the plea offer would be withdrawn,” that he “was not informed by his original
trial counsel that there was a deadline for acceptance,” and that “[n]othing in
the record controverts [his] assertion he was never informed of any deadline .
. . , assuming that deadline indeed existed.”  [Emphasis added.]  Appellant
concludes, “Assuming arguendo that a deadline was attached . . . ,
there is no evidence said deadline . . . was conveyed to [him].”  [Emphasis
added.]

          During a hearing on appellant’s motion to
recuse the trial judge, the prosecutor said,

The initial plea offer on th[e] case was
three years, and we worked it down to two . . . .

          . . .  Mr. Dobson [appellant’s
original counsel] got ahold of me and said, [“]Look, I can probably get him to
understand the reasons behind taking two years.[”] . . .  I told Mr. Dobson,
[“]That’s fine with the State.[”]  The offer was three, and I’m not going to
quibble over a year.  So . . . in the end of June, that’s what I was expecting
to do on June 24th, was plea him out.  That’s what the Court was expecting.

          That morning, it came to my
attention that Mr. Dobson was no longer representing [appellant], that new
attorneys had been hired and those are the two attorneys sitting here in front
of you.  They showed up that afternoon. . . .

          Once Mr. Dobson got off the
case, I informed both the two new attorneys that as far as the State was concerned,
the plea deal was off. . . .  [Appellant] had a good offer; he chose not to
take it.

During the same hearing, appellant’s trial counsel
said, “[W]e were called before the Honorable Court to give our announcement as
to the State’s offer, which [appellant] refused.”

          Thus, even if the two-year plea bargain
offer had a deadline that appellant did not know about, the termination of the
offer was not caused by the expiration of the deadline; it was caused by the
State’s decision to withdraw the offer and appellant’s nearly contemporaneous decision
to reject it.  Because appellant cannot show a reasonable probability that the
result of the trial court’s proceedings would have changed had he known of a
deadline to accept the State’s plea bargain offer, we overrule that basis for
appellant’s ineffective assistance claim.  See Strickland, 466 U.S. at
694, 104 S. Ct. at 2068.

          We hold that each of appellant’s contentions
regarding his claim of ineffective assistance is without merit, and we overrule
his second point.

The Trial Court’s Alleged Interference in Plea
Negotiations

          In his third point, appellant contends that
the trial court improperly engaged in his plea negotiations with the State.  The
basis for this allegation is the following statement that the trial judge made
during a pretrial hearing in June 2008:

          THE COURT:  All right.  We’re
supposed to have a plea here today.  It appears that [appellant] does not want
to plea.  For the record, I will not accept any plea bargain in this matter,
unless it is for the maximum term of ten years.

Appellant claims that this statement evidences the
trial court’s intrusion into the plea negotiation process and warrants reversal.[13]

          Plea bargains are an integral part of the
criminal justice system.  Moore v. State, 295 S.W.3d 329, 331 (Tex.
Crim. App. 2009) (citing Gutierrez v. State, 108 S.W.3d 304, 306 (Tex.
Crim. App. 2003)).  At its core, a plea bargain is a contract between the State
and the defendant.  Id.  As a contract, when both parties have entered
knowingly and voluntarily into the plea bargain, they are bound by its terms
once it is accepted by the judge.  Id.  Because a plea-bargain agreement
is solely between the State and the defendant, only those parties may alter the
terms of the agreement; the trial court commits error if it unilaterally adds
unnegotiated terms to a plea-bargain agreement.  Id. at 332 (explaining
that the “only proper role of the trial court in the plea-bargain process is
advising the defendant whether it will ‘follow or reject’ the bargain between
the state and the defendant”).

          A trial judge’s participation in plea
discussions prior to an agreement being reached is disfavored because the power
and position of the judge may improperly influence the defendant to enter a
guilty plea.  Wright v. State, 776 S.W.2d 763, 767 (Tex. App.—Corpus
Christi 1989, pet. ref’d); see Perkins v. Court of Appeals for Third Supreme
Judicial Dist. of Texas, at Austin, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987);
Lynch v. State, 318 S.W.3d 902, 903 (Tex. App.—San Antonio 2010, pet.
ref’d).  The trial judge should always avoid the appearance of any judicial
coercion or prejudgment of the defendant because such influence might affect
the voluntariness of the defendant’s plea.  Perkins, 738 S.W.2d at 282. 
The trial court remains free in every case, however, to refuse to allow plea
bargaining or to reject a particular plea bargain entered into by the State and
the defendant.  Gaal, 332 S.W.3d at 457; State ex rel. Bryan v.
McDonald, 662 S.W.2d 5, 9 (Tex. Crim. App. 1983) (citing Morano v. State,
572 S.W.2d 550, 551 (Tex. Crim. App. [Panel Op.] 1978)); Smith v. State,
243 S.W.3d 722, 726 (Tex. App—Texarkana 2007, no pet.).

          The record and applicable case law do not
support the contention that the trial court improperly interjected itself into
the plea-bargaining process.  The trial court’s statement that it would not
“accept any plea bargain in this matter, unless it [was] for the maximum term”
did not unilaterally add unnegotiated terms to the plea-bargain agreement.  See
Moore, 295 S.W.3d at 332.  Instead, the trial court simply refused to allow
any plea bargaining by effectively nullifying any advantage to be gained by
using a plea bargain—after all, a plea bargain for the maximum amount of the
statutory punishment is really no plea bargain at all.  See Gaal, 332
S.W.3d at 458.  The trial court was acting within its right to “refuse to allow
plea bargaining or to reject a particular plea bargain.”  See State
ex rel. Bryan, 662 S.W.2d at 9.  We are unpersuaded by appellant’s attempt
to equate the trial court’s decision to effectively foreclose plea negotiations
with interference in negotiations.[14]

          For these reasons, we conclude that the
trial court did not interfere with plea negotiations.  We overrule appellant’s
third point.

Conclusion

          Having overruled all of appellant’s remaining
points on remand, we affirm the trial court’s judgment.

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
 July 14, 2011









[1]See
Tex. R. App. P. 47.4.





[2]See
Tex. Penal Code Ann. §§ 49.04(a), .09(b)(2) (West 2011).





[3]Appellant
also pled true to the indictment’s paragraphs that concerned his previous
convictions.





[4]The
plea paperwork recited that appellant was waiving his rights to remain silent,
to confront and cross-examine witnesses, to not incriminate himself, and to be
tried by a jury.





[5]As
in this case, the trial court in Gardner ensured at the time of the plea
that the defendant was pleading guilty for no other reason than that he was
guilty.  Id.





[6]During
voir dire, appellant’s counsel asked the jury panel members about their
opinions on the purpose of confinement and conversed with them about specific
attributes of community supervision.





[7]We
note, therefore, that while appellant later expressly waived his right of
confrontation, he nonetheless had the opportunity to exercise that right at
trial.





[8]We
note that appellant signed the plea paperwork, and therefore expressly waived
his right against compelled self-incrimination, before he testified.





[9]In
Palacios, the court of criminal appeals said that article 26.13’s
admonishments should be given prior to the trial court’s acceptance of the
guilty plea.  556 S.W.2d at 351–52; see also Tutor v. State, 599 S.W.2d
818, 819 (Tex. Crim. App. [Panel Op.] 1980) (“The proper time to admonish a
defendant is when he is arraigned, and prior to impaneling the jury to assess
his punishment.”).





[10]We
recognize that rule 44.2(b) “does not place a burden on either party.”  Umoja
v. State, 965 S.W.2d 3, 12 (Tex. App.—Fort Worth 1997, no pet.) (op. on
reh’g).





[11]Dr.
Venegas explained, “[D]iabetes over time can affect . . . the brain, therefore
diminishing [a person’s] potential to take up oxygen, which would affect brain
cells, which would also impair cognition.”





[12]Dr.
Venegas stated that he had a “continual dialogue” with Bowling about
appellant’s treatments.





[13]In
his supplemental brief on remand, appellant seems to contend that the trial
court coerced him into entering his guilty plea at trial.  Appellant does not
explain, however, how the statement that is quoted above affected his decision
to plead guilty before the jury.





[14]Appellant
asserts that the trial court “invaded the province of the prosecution and the
defense in continued negotiations to achieve a plea-bargain disposition of the
case.”  In interpreting the trial judge’s comment at issue, however, the court
of criminal appeals opined, “The trial judge, perhaps inarticulately, cut
off plea bargaining.”  Gaal, 332 S.W.3d at 458 (emphasis added).  The
court held that a “reasonable person . . . would translate the judge’s
statement as, ‘I’m not going to reset this case for any more plea negotiations;
we’re going to trial.’”  Id.  Thus, under the court of criminal appeals’s
reasoning, the trial court did not participate in the plea bargaining process
but instead terminated it.  Appellant also argues that the trial court took a
“firm position on punishment” when making its statement about refusing to
accept any plea bargain except for the maximum amount of confinement.  But the
court of criminal appeals rejected appellant’s position in that regard.  Id.