# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00085-CR

**Timothy Wade Foth, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BLANCO COUNTY, 33RD JUDICIAL DISTRICT
### NO. CR01392, HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Under a single indictment, Timothy Wade Foth was charged with one count each of aggravated robbery and aggravated kidnapping and four counts of aggravated sexual assault. *See* Tex. Penal Code §§ 20.04(a)-(c), 22.021(a), (e), 29.02(a), .03(a)-(b). The offenses all involved the same alleged victim. A jury found Foth guilty of all of the charged offenses except one count of aggravated sexual assault. At the punishment phase, the jury sentenced Foth to 50 years' imprisonment for the aggravated robbery, to life imprisonment for each of the three aggravated-sexual-assault offenses, and to 99 years' imprisonment for aggravated kidnapping. *See id.* § 12.32. The district court rendered its judgments of conviction per the jury's verdicts. In three issues on appeal, Foth contends that the district court's allegedly improper involvement in the plea-bargain process and in his decision regarding whether to testify at trial violated his due-process rights and

that the district court erred by allowing into evidence testimony regarding pubic-hair comparisons. We will affirm the district court's judgments of conviction.

## BACKGROUND

Before trial, the district court called a "plea deadline docket." During that hearing, the district court asked Foth whether he understood "that today was the plea deadline date," and Foth answered, "Yes." Next, the district court confirmed that no plea offer had been made until recently and asked the State to list the terms of the plea offer. The State explained that it was offering a punishment of 40 years' imprisonment for the offenses if Foth pleaded guilty "to one or two or three of the counts" and that the punishments would run concurrently. Additionally, the State related that there was a motion to revoke Foth's community supervision in a separate case and that the punishments assessed in this case would run "concurrently to" the punishment assessed as part of the revocation proceeding. Both Foth and his attorney agreed with the State's rendition of the offer. Then, the district court asked Foth whether he understood that the punishments for the alleged offenses could be "stacked" if the jury found him guilty of more than one of the charged offenses, and Foth answered, "Yes, Your Honor." Further, the district court asked Foth if he had time to discuss with his attorney the potential punishments that might be assessed and if he understood the State's plea offer, and Foth answered, "Yes," to both questions. Following that exchange, the district court inquired whether Foth wanted to accept or reject the plea offer, and Foth stated that he wanted to reject the offer. Shortly thereafter, Foth's attorney questioned Foth regarding whether he would still reject the plea offer if the State reduced the punishment to 30 years, and Foth explained that he

2

would reject a plea offer with those terms as well. Finally, the district court stated that the day of the hearing was the last day that the court would have accepted a plea-bargain agreement.

After the hearing, the case was set for trial. During the trial, the State called as witnesses K.R. (the victim); Officer Michelle Briggs, who responded to a 911 call regarding K.R.; Detective Benjamin Ablon, who investigated the scene of the alleged crimes; Debbie Coats, who performed a sexual-assault-nurse examination (SANE) on K.R.; Lindsey Bynum, who compared hair fragments recovered from the scene with pubic hairs collected from K.R.; and Delilah Palmer, who performed DNA testing on samples recovered from the scene and from K.R.'s SANE kit.

Foth offered to give K.R. a ride in his car but drove her to his house instead. At his house, Foth forced K.R. to engage in multiple sexual acts over a period of several hours, strangled her to the point of losing consciousness, tied her to a pool table, and shaved her genitals. During the assault, K.R.'s personal property was taken, and the property was later discovered in Foth's home. During the investigation of the offense, the police found pubic hair in Foth's home near where K.R. had been tied to a pool table, a disposable razor, and a pair of electric clippers.

During the trial, the State called Bynum to testify regarding pubic-hair comparisons that she performed between a pubic-hair standard collected from K.R. after the alleged offenses and fragments collected from Foth's home. Before discussing the comparisons, Bynum stated that the structure and shape of pubic hairs can change over time and that the comparisons were made over a year after the alleged offenses. Regarding fragments recovered from the razor collected from the scene, Bynum related that three of the "pubic hair fragments [we]re microscopically dissimilar to [K.R.]'s pubic hair standard" and concluded that those pubic hairs did not come from K.R. Next,

3

Bynum stated that she compared pubic-hair fragments collected from the electric clippers recovered from Foth's home with K.R.'s pubic-hair standard, that one of the fragments had similarities to and differences from K.R.'s pubic hair so no determination could be made regarding whether it was one of K.R.'s hairs, and that five fragments were so dissimilar from K.R.'s pubic hair that Bynum determined that the fragments did not belong to K.R. Further, Bynum discussed comparisons that she performed on 66 other hair fragments, including pubic-hair fragments, collected from Foth's home, and she revealed that the hair fragments were dissimilar to K.R.'s pubic hair and opined that none of those fragments came from K.R. Bynum explained that she also compared another 100 pubic-hair fragments that were collected as a "clump" from Foth's home and recalled that they were "visually similar to the victim's pubic hair standard," but she stated that no determination could be made regarding whether they belonged to K.R. because it was a limited comparison. Finally, during her cross-examination, Bynum summarized her analysis as indicating that the fragments that she examined were either not a match to K.R. or that the results were "inconclusive."

In addition, the State called Palmer to the stand as its last witness to discuss DNA testing that she performed as part of the investigation in this case. Regarding the results of her testing, Palmer testified that testing performed on epithelial cells from a sample of a "dried secretion" collected from K.R.'s body was consistent with a mixture of DNA from K.R. and Foth. Palmer related that she performed DNA testing on samples taken from the handle and the razor of the electric hair clippers collected from Foth's home and that the results were consistent with a mixture of DNA from K.R. and Foth.

4

After the State called its last witness, the following exchange occurred during a hearing outside the presence of the jury:

[District Court]: I'll step out if you need to speak with your client or do anything on the record.

[Foth's attorney]: We've already spoken, Your Honor, so it can be on the record.

[District Court]: Okay.

[Foth's attorney]: And for the limited purpose of my client's rights against self-incrimination under the Fifth Amendment of the United States Constitution . . . he and I have discussed his rights. And so for that limited purpose and that purpose alone, we'd ask to swear him in and—swear him in and let me ask a few questions and get sworn testimony in regards to that issue.

[District Court]: Sure, sure.

. . .

[District Court]: And you heard your attorney talk about the limited nature of the current testimony, okay? So I don't want you to talk about anything you've heard or factual things at this time. Just listen to his question and we'll kind of go from there. Okay?

. . .

[Foth's attorney]: And you understand—we've discussed this previously—you have a right to either testify in this case or not testify in this case; is that correct?

[Foth]: Yes.

[Foth's attorney]: And you and I have—we're not going to talk about the legal advice I've given you, but you and I have discussed the legalities of that and possible upsides and downsides, correct?

[Foth]: Yes.

[Foth's attorney]: And at this time, is it your opinion that you wish to assert your right not to testify and be clear on the record that you don't want to testify in this case?

5

[Foth]: Yes.

[Foth's attorney]: Your Honor, that's all I have.

[District Court]: Well, thank you.

Following closing arguments, the jury found Foth guilty of the charged offenses. Foth appeals the district court's judgments of conviction.

## DISCUSSION

**Plea Discussion**

In his first issue, Foth contends that the district court violated his due-process rights by "participating in the plea agreement process and pressuring [him] to plead guilty." Foth asserts that the district court explained that "it was plea deadline day," "wanted to make sure [that he] understood rights and discussed them with his attorney," and "asked what the plea offer was." Further, Foth points out that the State set out the terms of the plea offer, that Foth and his attorney "confirmed that was the understanding of the plea agreement," that his attorney mentioned the possibility that his punishment might be "stacked," that he personally rejected the plea offer, and that his attorney inquired whether his answer would be different if the plea offer had been for a lower sentence.

Foth contends that the district court acted improperly because it "should not be engaged in the plea bargain proceedings, especially when counsel engages the court regarding the decision of the defendant [and] when the judge inquires of the existence of a plea bargain." As Foth acknowledges, the Supreme Court has stated that trial courts should take "measures" pertaining to

6

plea offers "to help ensure against late, frivolous, or fabricated claims" by, among other options, requiring that the terms of a formal plea agreement "be documented," that the offers "be in writing," and that "formal offers . . . be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence," *Missouri v. Frye*, 566 U.S. 134, 146 (2012), but Foth suggests that "[t]he district court's comments . . . went much farther than documenting the plea offer or informing [him] of its terms." Instead, Foth urges that the district court "implied that a plea would be preferred" and that "it twice specifically stated" the potential punishment range for a first-degree felony and the possibility that his punishments might be "stacked" if the case went to trial. In other words, Foth suggests that the district court improperly told him that if he "rejected [the] plea offer[,] he would end up suffering grave consequences" by giving "specific examples of negative results" that could happen during sentencing, "showed a preference for a plea by [him]," and displayed "[]partiality by preferring the State's offer over going to trial." *See Ex parte Williams*, 704 S.W.2d 773, 777 n.6 (Tex. Crim. App. 1986) (observing that "[a] trial judge should not participate in plea discussions or negotiations until an agreement has been reached between a defendant and the State"); *State ex rel. Bryan v. McDonald*, 662 S.W.2d 5, 9 (Tex. Crim. App. 1983) (stating that "[j]udicial involvement in plea negotiations runs afoul of due process and fundamental fairness in several ways").

In addition to arguing that the district court erred, Foth asserts that the district court's use of "'scare' tactics" somehow harmed him "because it was obvious [he] wanted to go to trial on all counts" and because the coercive effects of the district court's statements could not be undone even though "the district court did not directly indicate that it would not be impartial." *Cf. United*

*States v. Hemphill*, 748 F.3d 666, 675-77 (5th Cir. 2014) (determining that trial court erred by indicating preference for plea agreement and that error was harmful, in part, because court imparted "the knowledge that several defendants who had rejected plea offers ended up suffering grave consequences" and because "there is at least a reasonable probability that Hemphill would not have entered a guilty plea absent the district court's injection of comments that went beyond merely evaluating a properly disclosed plea agreement").[1]

As an initial matter, Foth's complaints regarding the district court's comments have not been preserved for appellate consideration. *See* Tex. R. App. P. 33.1(a) (stating that to preserve error for appeal, record must show that complaint was made to trial court and that trial court ruled on request or refused to rule and that "complaining party objected to the refusal"). During the pretrial hearing, Foth made no objection to any of the district court's allegedly improper statements regarding the plea offer, the charges against him, or the possibility that he might be required to serve his sentences consecutively if convicted. In fact, Foth made no objection at all during the hearing. Accordingly, Foth has not preserved his complaint for appellate review. *See Hallmark v. State*, 541 S.W.3d 167, 170 (Tex. Crim. App. 2017) (explaining that "a defendant forfeits error if he fails to object to a trial judge's improper participation in plea negotiations"); *see also Curry v. State*, 186 S.W.3d 39, 42 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (concluding that due-process

---

[1] In a related argument, Foth asserts that the district court violated his due-process rights because the district court harmed his legal defense by "in effect protecting defense counsel by showing the judge and the record that he communicated the plea offer to his client." In other words, Foth seems to be suggesting that his due-process rights were violated because the possibility of pursuing an ineffective-assistance-of-counsel claim for failure to disclose a plea offer was taken away because of the hearing. We have been unable to find any support for the proposition that an individual's due-process rights could be compromised in the manner Foth suggests.

8

challenge was waived and explaining that, with exception of facial challenges to statutes or attacks on constitutionality of statute that serves as basis for conviction, "[c]onstitutional rights, including the rights of due process and due course of law, may be waived if the proper request, objection, or motion is not asserted in the trial court"); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (observing "that almost every right, constitutional and statutory, may be waived by failing to object").

However, even if Foth had preserved this issue for appellate review, we would find no error.[2] Although Foth contends that the district court improperly pressured him in an attempt to force him to accept a plea deal, we disagree. The district court did not express a preference that Foth accept the plea offer, encourage Foth to accept the offer, indicate that he would be found guilty or given a harsh sentence if he were found guilty, attempt to alter any term of the plea offer, or demonstrate any bias against Foth. *Cf. Papillion v. State*, 908 S.W.2d 621, 624 (Tex. App.—Beaumont 1995, no pet.) (finding that trial court exceeded its authority "when it inserted

---

[2] We note that most of the authorities relied on by Foth in this issue are federal cases addressing Rule 11(c) of the Federal Rules of Criminal Procedure, which expressly prohibits federal trial courts from participating in plea-bargain discussions. *See* Fed. R. Crim. P. 11(c). However, Texas has no comparably worded prohibition. *See Perkins v. Court of Appeals for the Third Supreme Judicial Dist. of Tex., at Austin*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987) (orig. proceeding) (noting that, unlike for federal courts, there is no Texas statute or rule "expressly" prohibiting trial courts "from participating in pre-plea discussions"); *see also Bowie v. State*, 135 S.W.3d 55, 61 (Tex. Crim. App. 2004) (explaining that "Texas does not have a single statutory analog to Federal Rule 11" but that Code of Criminal Procedure has "several articles" corresponding to provisions of Rule 11). Perhaps more importantly, in the federal cases relied on by Foth, the defendants pleaded *guilty* to the alleged crimes and then later challenged their convictions by arguing that they were improperly entered into as a result of the trial courts' improper participation in plea negotiations, and those cases involved more coercive statements by the trial courts than the allegedly improper comments in question in this case.

9

additional, non-negotiated terms into the negotiated plea bargain between the State and appellant, and then made acceptance or rejection of said plea bargain contingent on whether or not appellant complied with said additional, non-negotiated terms"). The district court explained to Foth that he had the right to accept or reject the plea offer and that a trial would be held if Foth rejected the plea offer. *Cf. Johnson v. State*, 475 S.W.3d 430, 432-34 (Tex. App.—Houston [14th Dist.] 2015), *rev'd in part on other grounds*, 537 S.W.3d 929 (Tex. Crim. App. 2017) (noting that trial court questioned defendant regarding terms of plea offer and regarding whether defendant had rejected offer and determining that "[t]he record shows that the trial court was not involved in plea negotiations and, therefore, did not develop any sort of personal stake in the negotiations that would affect the trial court's impartiality").

Although the exchange in this case regarding the terms of the plea offer and the possibility of consecutive sentences occurred before Foth formally rejected the State's offer, we believe that the record in this case shows that the district court was not involved in the plea negotiations and did not develop any interest in the negotiations that could have affected its impartiality; on the contrary, the record reveals that the district court wanted to clarify for the record that Foth understood the terms of the plea offer and the punishment options should he elect to reject the plea offer and proceed to trial and to document whether Foth elected to accept or reject the offer.[3]

---

[3] In his brief, Foth also contends that the district court's actions in this case violated article 26.13 of the Code of Criminal Procedure, which Foth asserts "sets out the parameters of judicial participation" in plea agreements. *See* Tex. Code Crim. Proc. art. 26.13. Specifically, Foth asserts that article 26.13 allows trial courts to inquire about the existence of a plea-bargain agreement and about whether the defendant accepted or rejected the offer and then admonish the defendant of the consequences of entering a plea of guilty if he accepted the offer. *See id.* With the preceding in mind, Foth urges that he was improperly "warned of the consequences of NOT accepting a plea

Even if the district court's actions in this case somehow violated Foth's due-process rights and amounted to constitutional error, we would still be unable to sustain his first issue. Rule 44.2 of the Rules of Appellate Procedure provides that "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment *unless* the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a) (emphasis added). As described previously, Foth contends that the district court violated his due-process rights purportedly by exerting pressure on him to accept the plea offer, but Foth did not accept the terms of the plea offer and instead informed the district court that he wanted to proceed to trial. Moreover, nothing in the remainder of the record indicates that Foth's decision to reject the plea offer resulted in any unfavorable treatment by the district court at any point. Accordingly, we conclude beyond a reasonable doubt that any error stemming from the district court's exchange with Foth regarding the plea offer did not contribute to Foth's conviction or punishment. *See id.*

In his first issue, Foth also contends in an alternative set of arguments that his trial attorney provided ineffective assistance of counsel during the pretrial hearing by questioning Foth about the plea offer and by discussing the terms of the offer with the district court. Essentially, Foth

---

before [he] entered a plea bargain agreement."

However, we are not persuaded that any violation of article 26.13 occurred in this case. Article 26.13 sets out the required admonishments and other actions that must be performed before a trial court accepts a guilty plea, including inquiring into "the existence of a plea bargain agreement between the state and the defendant" and informing "the defendant whether it will follow or reject the agreement." *See id.* art. 26.13(a)(2). As set out previously, Foth rejected the State's plea offer and entered a plea of not guilty to all of the charges against him.

11

contends that his trial counsel's actions were designed to show that his counsel and the State had attempted to execute a plea-bargain agreement but that Foth "just won't listen." Further, Foth argues that his trial counsel improperly used "the trial court's authority as an appearance for encouraging [him] to plead guilty."

To succeed on an ineffectiveness claim, a defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional assistance" and must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 689, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). "It will not suffice for Appellant to show 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693). Instead, the "appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "[A]n appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

12

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim "is generally undeveloped." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) (stating that "[i]n the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions"). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Goodspeed*, 187 S.W.3d at 392 (stating that "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight"). If that opportunity has not been provided, as in this case, an appellate court should not determine that an attorney's performance was ineffective unless the conduct at issue "was so outrageous that no competent attorney would have engaged in it." *See Garcia*, 57 S.W.3d at 440.

In this case, although Foth filed a motion for new trial, no allegations of ineffective assistance were presented in the motion, and no hearing on the motion was held. Accordingly, Foth's trial attorney has not been afforded the opportunity to explain his reasons for discussing the terms of the plea offer with the district court and for questioning Foth about whether he wanted to accept or reject the plea. *See Mallett*, 65 S.W.3d at 63 (providing that "[w]hen the record is silent on the motivations underlying counsel's tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct was reasonable"); *Villalobos v. State*, No. 03-13-00687-CR, 2015 WL 5118369, at *5 (Tex. App.—Austin Aug. 26, 2015, pet. ref'd) (mem. op., not designated for publication) (stating that, in general, without record evidence regarding attorney's strategy, appellate courts "cannot speculate as to whether a valid strategy existed, and thus [an]

13

appellant cannot rebut the strong presumption of reasonable assistance"). For these reasons, we are unable to conclude that Foth's trial attorney's actions during the pretrial hearing fell below an objective standard of reasonableness under prevailing professional norms. *Cf. Frye*, 566 U.S. at 146 (stating that "formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence").

For these reasons, we overrule Foth's first issue on appeal.

**Right to Testify**

In his second issue on appeal, Foth asserts that the district court violated his due-process rights by "participating in the discussion" regarding his decision not to testify. As set out earlier, the district court conducted a hearing outside the presence of the jury after the State called its last witness in which Foth's attorney asked Foth about his desire not to testify. In that hearing, the district court explained to Foth that he was only going to be asked questions about his decision to testify and that he should not make statements regarding the facts of the case. Further, Foth asserts that the district court violated his due-process rights by "in effect forc[ing him] to waive his right to testify." Stated differently, Foth contends that by participating in the discussion, the district "court lent its significant authority to require" Foth to make a statement regarding his decision regarding whether to testify.[4]

_____

[4] In his brief, Foth refers to Rule 410 of the Rules of Evidence and to a case addressing Rule 410 when presenting his second issue on appeal. *See* Tex. R. Evid. 410; *Abdygapparova v. State*, 243 S.W.3d 191 (Tex. App.—San Antonio 2007, pet. ref'd). Rule 410 governs pleas and plea discussions and prohibits the admission of evidence "against the defendant" regarding the following

14

As an initial matter, we note that Foth did not object to any of the district court's comments or participation in the hearing and has, therefore, waived this issue for appellate review. *Cf. Bedree v. State*, No. 07-14-00009-CR, 2015 WL 1519602, at *2 (Tex. App.—Amarillo Mar. 31, 2015, no pet.) (per curiam) (mem. op., not designated for publication) (noting that "[e]ncompassed within the ambit of constitutional errors subject to waiver are those wherein the appellant was purportedly denied his right to testify" and determining that complaint asserting that "trial court violated [defendant's] right to due process" by allegedly inducing defendant to forego his right to testify "was . . . waived" "by not complaining of the same at trial").

Additionally, we would find no error if this issue had been preserved. In the hearing, the district court instructed Foth to limit his answers to whether he wanted to testify. Foth's attorney indicated his intent to make a record regarding Foth's decision whether to testify and only asked

---

types of statements pertaining to a defendant who made a plea or participated in plea discussions: "(1) a guilty plea that was later withdrawn;" "(2) a nolo contendere plea that was later withdrawn;" "(3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure;" or "(4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty or nolo contendere plea or they resulted in a later-withdrawn guilty or nolo contendere plea." Tex. R. Evid. 410(b). In *Abdygapparova*, our sister court of appeals determined that the trial court erred by "allowing the State to proceed with questions relating to statements made during plea negotiations" because those statements were not admissible under Rule 410. 243 S.W.3d at 206.

During the hearing at issue, Foth presented no objection regarding Rule 410 or regarding any comment made by the district court. *Cf. Saldano v. State*, 70 S.W.3d 873, 890 (Tex. Crim. App. 2002) (determining that defendant had not preserved issue regarding admission of evidence because he "did not object to the admission of the testimony of which he now complains"). Moreover, nothing in the record before this Court indicates that Foth was questioned regarding any statements made as part of a plea negotiation; on the contrary, Foth was only asked questions during the hearing regarding his desire to testify at the trial, and he was questioned outside the presence of the jury. Accordingly, we find Rule 410 and *Abdygapparova*, which addressed Rule 410, to be not applicable to the circumstances here. *See* Tex. R. Evid. 410(b).

15

questions pertaining to whether Foth understood that he had a right to testify, to whether Foth's attorney advised Foth of that right and of the potential consequences that could result from testifying, and to whether Foth intended to waive that right. These types of questions and hearings are not unusual, *see, e.g.*, *Orosco v. State*, No. 03-15-00383-CR, 2017 WL 2873352, at *3 (Tex. App.—Austin June 29, 2017, pet. ref'd) (mem. op., not designated for publication) (noting that trial "court questioned [the defendant] about whether he wanted to testify and whether he understood the consequences of testifying"), and we can see nothing in the record that would support a determination that the district court forced Foth to waive his right to testify or compelled Foth to make a statement regarding his right to testify. Accordingly, we cannot conclude that Foth's due-process rights were violated. To the contrary, it appears the district court was attempting to protect Foth's privilege against self-incrimination.

For these reasons, we overrule Foth's second issue on appeal.

**Evidence Regarding Pubic Hair**

In his final issue on appeal, Foth contends that the district court erred by "allowing the evidence of pubic hair comparisons to be introduced and admitted as evidence before the jury since it is junk science and unreliable." As support for this assertion, Foth argues that this type of evidence has little "jurisprudential value" and that the evidence "can only be vague and not guarantee a particular match to an individual." Moreover, Foth contends that even if courts have allowed this type of evidence in the past, that should "not insulate that procedure from challenge based on advances in scientific thinking." Further, Foth points to a statement from the Texas Forensic Science Commission explaining that hair examiners can detect an "association between a

16

questioned hair and a known hair sample from an individual" but "cannot provide a scientifically valid estimate of the rareness or frequency of that association" and that a hair examiner should explain "that hair comparison cannot be used to make a positive identification of an individual." *See Statement Regarding Texas Hair Microscopy Review*, Texas Forensic Sci. Comm'n, at 3 n.1, http://www.txcourts.gov/media/1440418/statement-re-texas-hair-microscopy-review.pdf. Moreover, Foth contends that he was harmed because Bynum's testimony "came perilously close to" stating that the pubic hair fragments recovered from Foth's home matched the pubic-hair standard collected from K.R.

Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, appellate courts "will uphold a trial court's determination on the admissibility of evidence if it is reasonably supported by the record and correct under any applicable legal theory." *Franks v. State*, No. 03-08-00129-CR, 2010 WL 1730032, at *2 (Tex. App.—Austin Apr. 28, 2010, pet. ref'd) (mem. op., not designated for publication).

Turning to the overall admission of the evidence pertaining to the pubic-hair comparisons, we note that Foth did not object to the admission of this evidence and made no challenge to Bynum's qualifications as an expert. Accordingly, Foth has not preserved these complaints for appellate consideration. *See* Tex. R. App. P. 33.1; *see also Yazdchi v. State*,

17

428 S.W.3d 831, 844 (Tex. Crim. App. 2014) (stating that "the point of error on appeal must comport with the objection made at trial"); *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) (explaining that failure to object to admission of evidence waives appellate complaints regarding admissibility of that evidence); *Wilson v. State*, 7 S.W.3d 136, 145 (Tex. Crim. App. 1999) (stating that failure to object to witness's qualifications procedurally defaults that claim on appeal).

Even assuming that this complaint was preserved for appellate consideration and that the district court abused its discretion by allowing Bynum to testify regarding the pubic-hair comparisons that she performed, we would still be unable to sustain this issue on appeal. The erroneous admission of evidence is not constitutional error. *See Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Accordingly, the error must be disregarded unless it affected substantial rights. Tex. R. App. P. 44.2(b). A defendant's substantial rights are affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In determining whether a defendant's substantial rights were affected, the reviewing "court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *see Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). "The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable," and the court may also consider "whether the State emphasized the error." *Motilla*, 78 S.W.3d at 355-56. If the reviewing court, "after examining the record as a

whole, has fair assurance that the error did not influence the jury, or had but a slight effect," then the defendant's substantial rights were not affected. *Id.* at 355 (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

For the reasons that follow, we do not believe that the admission of the evidence harmed Foth. First, in her testimony, Bynum gave her opinion that the hair fragments collected from Foth's home either did not come from K.R., or that there were too many differences between the fragments and K.R.'s pubic-hair standard to provide an opinion regarding whether the fragments came from K.R. In other words, although Bynum said that some of the fragments had similarities to K.R.'s pubic hair, Bynum stated in her direct testimony and summarized in her cross-examination that she could not conclude that any of the collected fragments came from K.R. In fact, Bynum agreed that she could not say "to any scientific certainty" that any of the fragments collected from Foth's home could be "tied to anybody."

Second, evidence of Foth's guilt was presented through several sources. *Cf. Geuder v. State*, 142 S.W.3d 372, 376 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (noting that "the presence of overwhelming evidence of guilt may be considered" when performing "a general 44.2(b) harm analysis"). K.R. described in detail the alleged crimes committed by Foth on the day in question. Further, Officer Briggs and Coats both testified that K.R. told them what Foth had done, and their testimonies were consistent with K.R.'s testimony. Additionally, Detective Ablon's testimony regarding Foth's home and the items seized from the home was consistent with K.R.'s descriptions of how and where she was assaulted both physically and sexually as well as her assertions that Foth shaved her pubic area and took her property. Moreover, Palmer explained in her

19

testimony that various types of DNA testing indicated the presence of Foth's DNA in a sample taken from K.R.'s skin and revealed the presence of Foth's DNA and K.R.'s DNA on the electric hair clippers collected from Foth's home. In addition, photos of injuries that K.R. sustained were admitted into evidence.

Finally, neither the State nor Foth mentioned potential testimony regarding pubic-hair comparisons during their opening statements. Instead, the State focused on the allegations, and Foth argued that the encounter was consensual, suggested that K.R.'s recollection of the events in question may be inaccurate due to her prior drug use, and urged that there were "major inconsistencies" between K.R.'s written statement and her earlier description of the events to the police and to the sexual-assault-nurse examiner. Although the State mentioned in its closing argument that K.R. submitted to having her pubic hair tested, the State only mentioned the test in the context of arguing that she was serious about proving the allegations, and the State made no mention of the results of the pubic-hair comparisons. Instead, the focus of the State's argument was on K.R.'s testimony and on the evidence corroborating that testimony. In his closing argument, Foth did not mention the testing performed by Bynum and was able to present its defensive theories questioning K.R.'s credibility and urging that the State failed to meet its burden of proving the elements of the charged offenses beyond a reasonable doubt.

In light of the preceding, we must conclude that any alleged error stemming from the district court's decision to admit into evidence Bynum's testimony did not have "a substantial and injurious effect or influence in determining the jury's verdict" and therefore did not affect Foth's

20

substantial rights.  *See King*, 953 S.W.2d at 271.  Accordingly, even assuming that there was error, any error would be harmless.  *See* Tex. R. App. P. 44.2(b).

In his final issue, Foth also presents a related set of arguments contending that the district court erred by granting the State's objections made while Foth was cross-examining Bynum.  Specifically, Foth notes that he asked Bynum the following two questions: (1) "But when we're talking about proving a case with evidence beyond a reasonable doubt, [a hair comparison] really doesn't help in that regard, does it," and (2) "The fact that something could have happened, that's not—that's not conclusive of anything, is it?"  When Foth asked these questions, the State objected and argued that the questions invaded the province of the jury, and the district court sustained the objection both times.  On appeal, Foth contends that the district court abused its discretion by sustaining the State's objections because the district court's rulings prevented him from "impeaching . . . the relevance and credibility of such hair evidence[]" and because the district court's ruling "gave the witness's scientific jargon and testimony credence."  Moreover, Foth argues that the district court's erroneous evidentiary rulings harmed him because his cross-examination was "necessary to show the absolute uselessness of the pubic hair 'evidence' and how it did not support anything to do with the guilt or innocence of the accused."

When Foth asked the questions at issue, he was essentially asking Bynum to comment on whether pubic-hair analysis could be used to prove something beyond a reasonable doubt.  In addressing a similarly worded exchange, one of our sister courts of appeals determined that the defendant's trial attorney should have objected to the testimony from an expert witness regarding whether the defendant "was, beyond a reasonable doubt, legally intoxicated at the time of the

accident." *See Blumenstetter v. State*, 135 S.W.3d 234, 248 (Tex. App.—Texarkana 2004, no pet.). In its analysis, our sister court reasoned that "expert testimony concerning whether an issue is proven beyond a reasonable doubt is not specialized knowledge which would assist a jury" and that trial courts should exclude expert testimony "[w]hen the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury." *Id.* at 248, 249; *see also* Tex. R. Evid. 702 (stating that expert witness may testify "if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue").

Bearing this analysis in mind, we are unable to conclude that the district court abused its discretion by sustaining the State's two objections to the two questions posed by Foth to Bynum during Bynum's cross-examination. In any event, even if the district court did abuse its discretion, we would be unable to conclude that those rulings harmed Foth. As set out earlier, evidence of Foth's guilt, including DNA testing, was presented through the testimony of several witnesses. Moreover, Bynum explained in her testimony that she was unable to conclude that any of the hair fragments collected belonged to K.R., and Bynum agreed in her cross-examination that her results were either that the fragments "didn't come from" K.R. or were "inconclusive" and that the fragments could not be tied to any individual. Additionally, as discussed more thoroughly above, neither party emphasized Bynum's testimony. Accordingly, even assuming that the district court abused its discretion by sustaining the State's objections, we would conclude that the errors did not affect Foth's substantial rights and were, therefore, harmless. *See* Tex. R. App. P. 44.2(b).

For all of these reasons, we overrule Foth's final issue on appeal.

## CONCLUSION

Having overruled Foth's three issues on appeal, we affirm the district court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   April 4, 2019

Do Not Publish